CRANE COMPANY ET AL. *v.* NEWMAN.

[No. 16,563. Filed December 5, 1941. Rehearing denied March 24, 1942. Transfer denied May 4, 1942.]

274

276

*Ashcraft & Ashcraft,* of Chicago, Illinois, and *Joseph H. Iglehart* and *Elvin H. Hewins,* both of Evansville, for appellants.

*LaFollette & McCray, Winfield K. Denton,* and *Isidor Kahn,* all of Evansville, for appellee.

DEVOSS, J.—Appellee, plaintiff, brought this action against appellants, Crane Company and Eldon Welborn, etc., employee. Recovery was sought on the grounds of alleged negligence on the part of appellants in permitting appellee to walk into an elevator shaft at a time the elevator was not at said landing.

The specific grounds of negligence as charged in the complaint are as follows:

"1. That the defendants carelessly and negligently failed and omitted to maintain a light in front of said elevator.

"2. That the defendants carelessly and negligently opened the elevator gate and invited this

plaintiff to enter said elevator when the elevator had not stopped at said landing, but at some higher landing.

"3. That the defendants carelessly and negligently invited this plaintiff to enter said elevator shaft without ascertaining if the elevator had stopped at said basement level.

"4. That the defendants carelessly and negligently opened said elevator gate and invited this plaintiff to enter the elevator without first ascertaining if said elevator had stopped or was stopped at said landing."

The complaint further alleged that appellee went to the building maintained by appellants for the purpose of purchasing plumbing supplies, and that he was waited upon by Eldon Welborn, one of appellants, who was agent and servant of appellant Crane Company. That said Welborn suggested to appellee that he (appellee) ride from the ground floor of said buildings to the second floor on the elevator; that there was no light on the ground floor in the vicinity of the elevator and it was impossible to see; that said Welborn raised the gates in front of the elevator and invited appellee to enter, which appellee did and thereupon fell down said elevator shaft, landing on his back and right side, breaking his back and injuring his vertebrae and causing him to be a complete cripple for life, permanently impairing his ability to work and earn money, causing great physical and mental pain, impairing his health, and causing a severe nervous shock. That he was engaged in the plumbing business and was earning $300 a month, that he was thirty-four (34) years old, that he has not been able to work in his business since said accident, and will not be able so to work during the balance of his life. That by reason of said injuries he was compelled to expend $1,000 for medical and hospital

bills and that he has been damaged in the sum of $25,000 for which he prays judgment.

To this complaint, appellants filed their separate and several answer in two paragraphs. The first paragraph was in general denial and the second paragraph alleged a compromise and settlement in writing under date of June 26, 1937, between appellee and appellants before the beginning of this action, and attached thereto a copy of said release.

To this second paragraph of answer, appellee filed his reply alleging that at the time of said release neither the appellee nor appellants were aware of the injuries and damages to appellee as set out in the complaint, and that there was a mutual mistake relative thereto by appellee and appellants, and by reason thereof appellee elected to avoid said release and tenders into court the sum of $140, the sum paid under said release together with 6% interest thereon from June 21, 1937, in the total sum of $152.10. The record discloses that appellee tendered to the clerk below for the use and benefit of defendant Crane Company, at the time of filing his reply to second paragraph of answer the sum of $152.10.

Appellants filed their separate and several demurrer to appellee's reply to the second paragraph of answer, which demurrer was by the court overruled, to which ruling appellants excepted.

The cause was submitted to jury for trial and the jury returned a verdict on September 8, 1939, as follows:

"We the jury find for the plaintiff and assess his damages at $10,000. Andrew J. Saitore, Foreman."

The jury also returned with its general verdict, interrogatories Nos. 1 to 5 inclusive and answers thereto, requested by defendants (appellants).

On September 22, 1939, appellants filed their motion for a *venire de novo,* which was by the court overruled to which appellants each excepted and the court rendered judgment upon the verdict in favor of appellee for $10,000 against both of appellants.

Appellants in due time filed their motion for a new trial, which was overruled by the court and this appeal followed.

The errors assigned and relied upon for reversal in this court are: (1) The trial court erred in overruling the demurrer of appellants to appellee's reply to appellants' second paragraph of answer; (2) the trial court erred in overruling appellants' motion for a *venire de novo;* (3) the trial court erred in overruling appellants' motion for a new trial.

The specific reasons for a new trial as set out in the motion therefor are as follows: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) the court erred in giving to the jury of its own motion instructions Nos. 1 to 5 inclusive; (4) the court erred in giving to the jury at the request of plaintiff, appellee, instructions Nos. 1 to 9 inclusive; (5) the court erred in refusing to give to the jury as requested by defendants, appellants, instructions Nos. 3, 6, 11, 14, 16, and 20; (6) error of law occurring at the trial in admission of certain evidence set out in said motion.

By his reply to appellants' second paragraph of answer, appellee seeks to avoid the release set out in said second paragraph, on the grounds of a mutual mistake, and alleges that plaintiff was requested by defendant, appellant, to appear before a physician and surgeon for the purpose of an examination to determine the extent of his injuries. That said physician advised plaintiff and defendant that plaintiff's injuries were

superficial and consisted solely of an injured right knee, and right rib, and that at said time neither plaintiff nor defendant were aware of the injuries alleged in the complaint, and that by reason of such mutual mistake, such release was executed, and that the sum of $140 was paid to plaintiff in compensation for his known injuries, and that by reason of such mutual mistake, plaintiff elects to avoid said release and tenders into court said sum of $140 together with 6% interest thereon.

It is contended by appellants that this reply was insufficient to withstand the demurrer filed thereto for the reasons that such rescission did not precede the bringing of the action, and the reply contains no allegation to that effect; that there is no allegation of a tender being made to appellant of the consideration set out in said release promptly after plaintiff ascertained the facts as alleged in said reply.

Appellee contends that, although he did make a disaffirmance of the release and a tender of the money paid by appellant as a consideration of the release, he thereby assumed an unnecessary burden and that such tender was not required, since he was not seeking to recover for any damages arising out of injuries to his right knee, right ribs and left hip, which injuries above set out were the only injuries for which the consideration in the release was paid.

It is his contention that the recovery sought, is for injuries unknown at the time of such release and that the injury to his back was unknown, hence such release did not cover such injury, and that he is neither required to disaffirm such release or tender back the money received thereunder.

It is true that the only injuries specifically mentioned in the complaint were a broken back and injured verte-

brae. These injuries were received by appellee at the same time and in the same accident in which his right knee, right ribs and left hip were injured. The complaint further states that, "By reason of such accident, plaintiff's ability to work and earn money has been permanently impaired." The complaint seeks recovery for such impairment.

Appellee cites authorities to sustain his contention that under the circumstances a disaffirmance of such release and a tender back of the money received in consideration therof is not necessary. Some of the authorities do sustain this contention. *Bliss* v. *New York & C. Railroad* (1894), 160 Mass. 447, 36 N. E. 65; *Shook* v. *Illinois Cent. R. Co.* (1902), 115 F. 57; *Lumley* v. *Wabash R. Co.* (1896), 76 F. 66.

In Indiana, however, defective contracts are either void or voidable. Contracts induced by fraud or mistake are voidable only and may be avoided by the maker.

The reply filed by appellee in avoidance of the release does not charge fraud but wholly depends upon the charge of a mutual mistake. The averments of the reply must of necessity be considered relative to the answer which it is sought to avoid. The answer of appellant alleges that on the day set out in the complaint appellee did fall into said elevator shaft, and that appellant Crane Company, for the purpose of compromising and settling all liability therefrom, entered into a contract of final settlement therefor with appellee. The release signed by appellee contains the following statement:

"I, the undersigned, being of lawful age, hereby fully and forever release, acquit and discharge the said Crane Co., its successors and assigns from any and all liability, now accrued or hereafter to accrue on account of any and all claims or causes of action

which I now or may hereafter have against said Crane Co., its successors or assigns, in any way arising from any and all injuries, losses and damages by me or my property sustained or received on or about the 17th day of April 1937, through my falling into an elevator shaft in the building owned by said Crane Co. . . ."

We are not convinced that this contract, because of a failure to mention specifically "known and unknown injuries" is not a release in full from liability growing out of said accident, and unless said contract has been disaffirmed and rescinded for some legal cause, such release would be a bar.

Appellee by his reply admits the execution of the contract of release and by way of avoidance says there was a mutual mistake by appellee and appellant in the execution of such contract; that at the time of the execution of the contract of release, appellee was suffering with a broken back, and that neither of the parties hereto was aware of the fact, and that such injury did not enter into such release nor was it contemplated by either of the parties to said release.

It is our opinion that a contract entered into under the conditions set up in the reply is a voidable contract, and may be avoided by either party by proper procedure.

A mutual mistake is sufficient grounds upon which to set aside a release, where a physician employed by a defendant to examine plaintiff assures him (plaintiff) that his injuries are not serious. *Granger* v. *Chicago M. & St. P. R. Co.* (1927), 194 Wis. 51, 215 N. W. 576; *Jacobson* v. *Chicago M. & St. P. R. Co.* (1916), 132 Minn. 181, 156 N. W. 251; *Citizens' Street Railroad Company* v. *Horton* (1897), 18

Ind. App. 335, 48 N. E. 22; *Watson Coal and Mining Company* v. *Casteel* (1879), 68 Ind. 476.

In the case of *The Citizens Street Railroad Company* v. *Horton* (1897), 18 Ind. App. 335, 337, 48 N. E. 22, wherein an action was brought to recover damages for personal injuries caused by alleged negligence by appellant railroad company, the appellant by way of answer set up a release in full. Appellee filed a reply averring that such release was signed upon false and fraudulent representations by appellant. A demurrer was filed to such reply for the reason that it did not allege an avoidance of the contract of settlement. In passing upon the sufficiency of the reply this court said:

> "Contracts with infants, weak-minded people, married women, under certain circumstances; contracts induced by fraud, mistake, misrepresentations, and deceit, are voidable only. They may be avoided by the maker or his representative. . . ."

> "When a party has entered into a voidable contract and wishes to be restored to the rights he possessed before the contract was executed, he must promptly disaffirm the contract."

Many decisions are cited in the opinion above referred to, which sustain the conclusion reached therein. See also *Watson Coal and Mining Company* v. *Casteel, supra.*

It is true that the rescission and tender as disclosed by the record was not made until after the filing of the complaint, and the question of whether or not this rescission and tender was timely made is advanced by appellant.

In the case of *Watson Coal and Mining Company* v. *Casteel, supra,* The Supreme Court of this State said at p. 481:

> "There are well settled rules governing the rescission of contracts: The party against whom

rescission is sought must be in fault; both parties must be placed *in statu quo;* the party asking rescission must return or tender what he has received under the contract, and rescission must be promptly sought."

In the case of *The Norwich Fire Insurance Society* v. *Girton* (1890), 124 Ind. 217, 222, 24 N. E. 984, The Supreme Court stated:

"Appellee can not retain the benefit of the compromise and sue on the original contract. He must, at least, rescind, or offer to rescind, and tender back the money received on the contract of settlement before he can bring suit on the policy."

There is some difference in the last two cases from which we have quoted and the instant case. In the case of *Watson Coal and Mining Company* v. *Casteel, supra,* appellee sought to collect money for ground leased for coal, and appellant filed a counter claim and asked for affirmative relief, praying for an injunction against appellee from prosecuting his action for adjustment of royalties on coal mined, and for a cancellation of the lease.

In the case of *Norwich Union Fire Insurance Company* v. *Girton, supra,* appellee brought suit on an insurance policy as a valid and subsisting cause of action, and a release in compromise was set up by way of answer.

In the instant case, the theory of the complaint as advanced by appellee, is that the complaint is based on entirely different injuries from those contemplated in the release. The record discloses that within ninety (90) days after the release was pleaded in bar, the rescission and tender was made.

In the case of *Rockwell* v. *Capital Traction Co.* (1905), 25 App. D. C. 98, 4 Ann., Cas. 648, it was held

that it was time to tender the consideration after the release was pleaded in bar.

In the case of *Alabama and V. R. Co.* v. *Jones* (1895), 73 Miss. 110, 55 Am. St. Rep. 488, 19 So. 105, the court held that tender by plaintiff after being informed of the nature of release and of the right to disaffirm it is sufficient.

In the case of *Chesapeake and O. R. Co.* v. *Howard* (1899), 14 App. D. C. 262, it is held that a return or tender is sufficient if made before the case is submitted to the jury and in the case of *Memphis Street R. Co.* v. *Giardino* (1906), 116 Tenn. 368, 92 S. W. 855, it was held that tender must be made when the replication repudiating the settlement is filed. In *Smith* v. *Holyoke* (1873), 112 Mass. 517 it was held that an offer to return the consideration during the argument was within a reasonable term.

In the case of *O'Meara* v. *Haiden* (1928), 204 Cal. 354, 363, 268 P. 334, 60 A. L. R. 1381 the court said:

"In the present action, after the commencement thereof and before the trial the plaintiff herein offered in writing to rescind and tendered the defendant the $250 received at the time of executing the release, which the defendant refused to accept. There is creditable authority to sustain plaintiff's contention that the rescission . . . attempted to be made by plaintiff herein after suit began was timely, and was sufficient to entitle plaintiff to litigate the validity of the general release at the trial of the action."

34 Cyc. 1072 had the following to say on the subject:

"Undoubtedly no duty exists to return the consideration until the fraud or other invalidity is discovered. Beyond this the authorities are in conflict as to when the restoration of consideration or tender thereof must be made. Some cases, in many of which cancellation of the release is asked in the complaint or statement of claim, decide that such

return or tender must be made before the releasor institutes suit on the cause of action released. Other decisions take the view that a credit on the verdict is sufficient, and hence no actual tender is apparently required at any time. Furthermore, authority is not lacking for the statement that restoration or tender at any time during the pendency of the suit is early enough. But the clearest and soundest rule is that no restoration or tender need be made until an attack is made on the release. Such attack generally occurs when the ground of invalidity, as fraud is replied in avoidance to a plea of the release to the original right."

We are of the opinion that the reply was sufficient to withstand the demurrer and that rescission and tender are timely made, when made within a reasonable time after the release is pleaded, and that ninety (90) days, the time in which the rescission and tender was made herein, is within such reasonable time.

It is next contended by appellant that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law. The evidence discloses that appellee was engaged in the business of plumbing in the City of Evansville, Indiana, and that on April 17, 1937, he called at appellee's place of business to purchase some plumbing supplies. The material he wanted, as he was told by appellant Welborn, was on the second floor, and Welborn said they would go up and pick it out. Appellee and Welborn walked down a corridor which was dark and Welborn raised the door to the elevator shaft and appellee stepped in and fell. There was very little natural light, and an electric light, which was customarily burning, was not burning at the time appellee fell.

This accident occurred on Saturday morning, and on Monday, appellee went to see Dr. Weber who taped his ribs and told him to go home and stay in bed about a

week. At the time appellee went to Dr. Weber he had pain in one hip, one of his arms, his knee and his ribs. At that time, appellee stated he had no knowledge of any injury to his back. After staying in bed a week, he drove his truck and repaired faucets but did no heavy work. At the request of appellant, appellee prepared and sent to appellant a statement of his injuries and what he felt was due him by reason of the accident. In said statement he informed them that he had been disabled for fourteen days, and that his services were of the value of $10 per day and he asked $140 to adjust the matter. He further said that he had spent a week in bed on orders from his doctor in order to let his right knee, right ribs and left hip return to normal. Appellee also stated that this letter referred to all injuries he thought he had at that time.

Dr. Combs, on April 29, 1937, at the request of appellant, examined the appellee. Dr. Combs asked him where he hurt and he told Dr. Combs just what he had said in his letter. Nothing was said at that time about his spine. Dr. Combs did not tell him that he had an injured spine or about the injury to his back.

On the 26th day of June, 1937, appellee signed the release heretofore referred to, and in consideration therefor received the sum of $140. Appellee further says that when he signed the release he had no knowledge of the injury to his back.

Early in July, 1937, in attempting to dig in the ground and in bending over, trying to shovel, he had the first attack in his back and then for the first time knew of the injury to his spine. Thereafter these attacks came on an average of every four or five weeks. Dr. Kaufman was called during these attacks and administered some medicine to him, used a heat lamp and hot towels, and afterwards, on the first day of March, 1938,

X-rays were taken of appellee's back. In June, 1938, Dr. Schnek examined him and told him what his trouble was, that he had a broken back and advised an operation on his back, which was had in June, 1938.

After the operation he was put in a cast for about three weeks. He suffered much pain and on July 9, 1938, he was taken home and was in a cast from his toes to his armpits, one leg being out, which cast was kept on until September 13, 1938, and afterwards in walking around he used two canes part of the time and later only one cane. Appellee further testified that at the present time he cannot bend backward and is not able to do the work required of a plumber.

The witness, Dr. H. T. Combs, who examined the appellee at appellant's request, testified that he examined the appellee, which examination showed no evidence of injury to the chest, right wrist or left thigh but there were a few marks about the left knee. This witness further testified that he informed appellee, that he saw nothing serious, that the only way he could tell about a back injury was by X-ray. This statement relative to X-ray by this witness to appellee is denied by appellee.

Without detailing any more of the evidence, we will state that we have read the evidence relative as to how the accident occurred and we are of the opinion that from it, the jury could find negligence on the part of appellants.

In considering the question of the release pleaded by appellant, we think the case falls within the rule as stated in the case of *St. Louis-San Francisco Ry. Co.* v. *Cauthen* (1925), 112 Okla. 256, 48 A. L. R. 1447, which is stated as follows:

"Mutual mistake of fact should justify the rescission of a release executed under the belief that injuries are trivial and temporary, when as a matter of fact they are serious and permanent in their nature, where it appears that purpose of the release was to compensate for apparent injuries, known injuries, and that serious or permanent injuries were not contemplated by the parties at the time of the execution of the agreement or release, although in its terms the agreement or release is broad enough to cover all injuries resulting from the particular incident."

In arriving at a conclusion as to whether or not there was a mutual mistake as alleged by appellee, all of the circumstances relating to the signing must be taken into consideration and the sum paid for such release is also a matter for consideration. Negotiations for an adjustment were first suggested by appellant, and appellee thereupon in a very frank statement informed them what his injuries were. The only injuries mentioned in his correspondence to appellant were to his right knee, right ribs and left hip. The examination by the doctor employed by appellant brought to light no further injuries. No objection is raised to the amount of recovery in this case, being in the sum of $10,000, and it would seem most inequitable, that, for the sum of $140 it was intended by both parties or by either party to compensate for a broken back. The question in this case relative to the release is whether the minds of the parties met upon the understanding that the payment and acceptance of the consideration were in settlement of the injuries set out in the complaint.

Interrogatories were submitted to the jury which, together with the answers thereto are as follows:

"INTERROGATORY NO. 1. Was the plaintiff's back injured in the accident which happened April 17, 1937, which is referred to in the complaint?

"ANSWER: Yes.

"INTERROGATORY NO. 2. Did plaintiff suffer pain from such injury to his back from the time the accident happened on April 17, 1937, and until the plaintiff had his back operated on?

"ANSWER: No.

"INTERROGATORY NO. 4. Did plaintiff have his back-operated on in 1938?

"ANSWER: Yes.

"INTERROGATORY NO. 5. Was plaintiff aware that he was having such trouble with his back continuously from the time of such accident until he had his back operated on?

"ANSWER: No."

There was evidence, and considering interrogatory No. 5, the jury so understood, that appellee was not having trouble with his back continuously from the time of the accident to the time he was operated on. It is our opinion that the verdict of the jury is sustained by sufficient evidence and is not contrary to law.

The case of *St. Louis-San Francisco Ry. Co.* v. *Cauthen, supra,* together with authorities thereunder, treats of like matters as involved in this case and reference thereto was had in arriving at the conclusion stated herein.

Appellants next contend that the trial court was in error in overruling appellants' motion for a *venire de novo,* for the reason that the verdict returned by the jury failed to pass on all the issues joined and for the further reason that the verdict is indefinite and uncertain as to who the judgment debtor is by reason of the failure of the jury to name the judgment debtor or debtors. We do not agree with this contention.

There was a general finding by the jury. A general finding for plaintiff is a finding that every fact necessary to a recovery by him has been proved. *Early v. Hamilton* (1881), 75 Ind. 376. *Baldwin* v. *Roussey* (1922), 192 Ind. 300, 136 N. E. 85. A general verdict amounts to finding of every material fact essential to a recovery. It has the benefit of every reasonable intendment. *Modern Woodmen etc.* v. *Hall* (1921), 190 Ind. 493, 130 N. E. 849.

There is no question as to who the parties to this cause of action are and likewise as to the basis of the cause of action.

"We the jury find for the plaintiff and assess his damages at $10,000.00."

A reasonable intendment would be that the jury found on all the issues joined for the plaintiff and against all defendants named in the pleadings.

At the request of appellee, the court gave to the jury instruction No. 4, which informed the jury that if appellee entered appellants' place of business as a customer, upon the issue of contributory negligence, appellee had a right to rely upon the assumption that appellant would use due care not to injure him.

Appellants say this instruction was erroneous because it, in effect, told the jury appellee did not have to use due care for his safety. We do not think the instruction is open to this criticism. As owner of the premises, appellants did owe the duty to appellee as an invitee, if such he was, to exercise due care for his safety and the instruction so states.

*The Noblesville Gas and Improvement Co.* v. *Loehr* (1890), 124 Ind. 79, 24 N. E. 579. *Standard Oil Co. of Ind.* v. *Henninger* (1935), 100 Ind. App. 674, 196 N. E. 706.

Instruction No. 5, requested by appellee and given by the court was a peremptory instruction and instructed the jury to find for appellee if the negligence charged in the complaint against appellant was made out and if the same was the proximate cause of the injury, unless the defense of contributory negligence had been established or unless it found for the defendant on the issue of release presented.

It is contended that the execution of the release was admitted in the reply and it was therefore necessary that the facts pleaded in avoidance in the reply be proved. This, we think, is what the jury was told in such instruction. It not only relates to the execution of the release but also as to the issue of avoidance.

Instruction No. 6, informed the jury that if the jury found that the release had been entered into because of a mutual mistake, that plaintiff had a right to rescind the same and that if the plaintiff did elect to rescind the same and returned the consideration received therefor within a reasonable time after he learned that Crane Company, a defendant, intended to rely upon such release, that under such conditions, said release would not prevent plaintiff from recovery in the action.

Appellant objects to this instruction for the reason it permitted recovery on the ground of mistake, although plaintiff knew his back was injured when he signed the release; that the instruction permitted recission of the release long after plaintiff knew he had serious back injuries; that the instruction failed to instruct on the burden of proof and being a peremptory instruction was therefore erroneous.

We think this instruction was proper. It was not a peremptory instruction and the burden of proof was covered by other instructions. The instruction con-

forms to the rules laid down in the cases heretofore cited.

Instruction No. 7 requested by plaintiff and given by the court also informed the jury relative to the release and rescission thereof. This instruction was proper and not subject to this criticism made by appellant.

Objection is made by appellants to the refusal of the court to give instruction No. 3 tendered by appellants. This instruction was covered by appellants' instruction No. 4 and it was not error to refuse the same. Likewise instruction No. 14 as requested by appellants was covered by instructions 10, 12, 13, and 15, and the refusal thereof was not error.

Appellant next contends that the court erroneously refused to give to the jury instruction No. 16 as tendered by appellant. This instruction would have informed the jury that unless the jury found that the plaintiff had tendered or offered to return the sum of $140.00 before suit was filed, plaintiff could not recover. This was not a proper instruction and the discussion in this opinion relative to the ruling on demurrer to appellee's reply to appellants' second paragraph of answer, covers the points involved.

Instruction No. 20 tendered by appellants and refused by the court related to rescission and tender. Instruction No. 6 tendered by appellee and given by the court properly covered the subject of rescission and tender and there was no error committed by the trial court in the refusal of appellants' instruction No. 20.

Dr. Edgar H. Weber was called as a witness for appellee and after testifying that he had examined appellee and after detailing what this examination disclosed as to the physical condition of appellee he was asked the following question by appellee:

"Doctor, in the light of your experience and your knowledge of Bob Newman (appellee), would you say he is in any way malingering or exaggerating any of his conditions?"

To this question the appellant objected and predicates error on the overruling of such objection.

It is contended by appellant that the question invades the province of the jury and that the question calls for an opinion as to the credibility of the appellee.

We think the question proper. The witness had made an examination of appellant for the purpose of determining his physical condition and in such examination elicited information from appellee for the purpose of his determination.

The conclusion relative to the appellee's physical condition was stated to the jury. We think the expert so testifying should be permitted to say whether the subject of the examination was exaggerating such condition. It is proper for the jury to be informed under what circumstances the doctor arrived at his conclusion as stated to the jury and how the same was reached and in our opinion the question seeks such information. The question, while unskillfully phrased, we think, refers to the testimony previously given by the witness to the jury, and does not seek the opinion of the witness as to the credibility of appellee who had testified prior thereto in this cause, and under the circumstances is not reversible error. 97 A. L. R. 1286; 28 A. L. R. 362.

The defendants introduced in evidence exhibit No. 1, which was a letter from LaFollette, Little and McCray, attorneys for appellee, and written by Charles M. LaFollette. The letter was as follows:

"Dear Sir:
"Mr. Robert Newman came in to see me, showed me the letter which he had written you on July 3rd,

explained his accident and damages, and states that you had refused to pay the full amount of the compromise offer of settlement contained in his letter of June 3rd. I can not understand why you did not accept the very fair compromise settlement offered by Mr. Newman. I have known Bob for a long time, and I assume you have, and I know that he would never do anything except the fair thing in any dealings which he might have with you or anyone else.

"I hope, therefore, that you will reconsider your rejection of his offer of compromise settlement and proceed to pay him in full by next Tuesday, June 22nd. I am not interested in collecting any fee from Bob if you pay up the amount which he asks, but if you do not see fit to do so by that time, I will be compelled to advise him that he is at liberty to withdraw his compromise offer and sue for the full amount of his damages, which I believe are considerably in excess of the very fair compromise offer which he has heretofore made to you.

"Yours very truly,
"LaFollette, Little & McCray
"by Charles M. LaFollette
"Charles M. LaFollette

"CML/DS"

Charles M. LaFollette was called as a witness by the plaintiff and the following question propounded to him:

"Did you have any other knowledge or information about Robert Newman's condition other than was contained in that letter?"

Defendant objected to the question, which objection was overruled and the following answer made thereto:

"I did not."

It is contended by appellant that any knowledge or information he may have had is not relevant to the case and the question is not limited as to the source of the information and that any information he may have had was not communicated to the defendant at the time the letter was written and that it is an attempt

to vary the statements in said defendant's exhibit 1. We think this was a proper question. The appellee had a right to show the circumstances and conditions surrounding the writing of the letter. The question was answered in the negative and no further information was given the jury relative thereto which would tend to vary the written statement. The appellant suffered no harm thereby.

Finding no reversible error, judgment affirmed.

NOTE.—Reported in 37 N. E. (2d) 732.