GUMBERTS *v.* GREENBERG.

[No. 18,374. Filed November 20, 1953.]

*Warren, Merrell & Combs* and *Wilbur F. Dassel*, of Evansville, for appellant.

*Joseph B. Minor*, of Evansville, and *Kenneth W. Weyerbacher*, of Boonville, for appellee.

CRUMPACKER, J.—The appellee seeks damages for personal injuries through a complaint in which she alleges in substance that on December 9, 1949, the appellant owned a building in Evansville, Indiana, divided into two apartments used as dwellings. That on said date and for some time prior thereto the appellee, as the appellant's tenant, occupied the apartment on the first floor of said building and the second floor, during all of said time, was occupied by the appellant himself. That to the northwest of said building and adjacent thereto the appellant owns and maintains a concrete driveway running from the street to a garage on the rear portion of his lot. That through the years said driveway had become cracked and in places the concrete had broken out leaving holes therein which the

appellant had filled with pieces of loose brick. That some time in the spring of 1949, the appellee notified the appellant that said driveway was in a bad state of repair and should be repaved which he then and there agreed to do. That the appellant failed to carry out his agreement but, on the contrary, permitted said driveway to remain in the unsafe condition above described. That on December 9, 1949, at 10:30 p.m. the appellee alighted from an automobile in said driveway preparatory to entering her apartment. The night was dark and, because of rain and sleet in the air, the visibility was bad. As she proceeded toward her apartment she stepped into one of said holes in the driveway which had been filled with loose brick as aforesaid and her ankle turned throwing her to the ground with such force that she sustained a comminuted fracture of the right wrist which ultimately necessitated an open reduction, all of which was attended by great expense and much physical pain and suffering. The appellant answered in conformity to Rule 1-3 and in addition thereto pleaded full and complete settlement of the cause of action sued on. By way of reply the appellee admitted such settlement agreement but alleges that it was entered into through the mutual mistake of both parties as to the extent of her actual injuries and was formally rescinded by her before this suit was instituted. A jury trial of these issues resulted in a verdict and judgment for the appellee in the sum of $1200.

The appellant rests his case for reversal on two propositions. First he contends that the complaint is based on the theory that he made a contract with the appellee whereby he agreed to repair the driveway in question and that he breached the same by a total failure to perform while the proof, if it supports a recovery on any theory, shows nothing more

than the negligent breach of a common law duty. In other words, the contention is that the suit is on contract and the recovery in tort which, the appellant says, constitutes a fatal variance and renders the jury's verdict contrary to law. It seems to be the well settled rule in Indiana that a tenant cannot recover for personal injuries caused by the defective condition of the leased premises unless the landlord agrees to repair and is negligent in so doing. *Franklin Fire Ins. Co.* v. *Noll* (1945), 115 Ind. App. 289, 58 N. E. 2d 947; *Guenther* v. *Jackson* (1922), 79 Ind. App. 127, 137 N. E. 582; *Roehrs* v. *Timmons* (1902), 28 Ind. App. 578, 63 N. E. 481. It is on this principle of law that the appellee defends the verdict as indicated by the following statement in her brief: "The theory of the amended complaint is that the landlord, upon being notified of the condition of the driveway, agreed to repair the same but made said repairs in a careless and negligent manner."

If there is any evidence in the record to sustain a verdict on this theory of liability it is obvious that we are confronted with the question of variance as the complaint makes no mention of repairs negligently made but on the contrary charges that none whatever were attempted in discharge of the agreement and the driveway was permitted to remain in its then unsafe condition. An essential element of the appellee's right to recover, on either theory, is an agreement by the appellant to repair. We have been unable to find any evidence bearing on this subject except the appellee's own version of the matter as appears from the following excerpt from the record:

"Q. Now Mrs. Greenberg, you have stated that sometime in the spring of 1949 you told Mr. Gumberts that the driveway was in bad repair.

"A. That is right.
"Q. And what did he say to you?
"A. He did not say anything.
"Q. He did not agree to repair it?
"A. He did not say anything."

From this incident and the fact that loose bricks were subsequently placed in the holes in the driveway by some one, whose identity the evidence fails to disclose, the appellee contends the jury was justified in inferring that an agreement for the repair of the driveway existed between the parties. We do not think that because a landlord, after notice of the defective condition of his premises, sees fit to repair the same it naturally follows that he did so in performance of some agreement concerning which there is no evidence. Under such circumstances it is just as reasonable to infer that he did so voluntarily and a finding to the effect that an agreement prompted his action would be the sheerest surmise or guess.

It was suggested in oral argument that where a landlord maintains a passage way for the common use of his tenants he is under a common law duty to maintain such passage way in at least as good a state of repair as it was at the time of the letting and that the judgment herein should be upheld on the theory that the evidence discloses a breach of such duty. *Andrews* v. *Williamson* (1906), 193 Mass. 92, 78 N. E. 737. Certainly such is not the theory of the complaint and a search of the record fails to yield the faintest suggestion that any one had that principle of law in mind when this case was tried. The appellee tried her case on the theory of an agreement to repair and the negligent performance thereof and it fails because of a total lack of evidence tending to prove the agreement upon which it rests.

Although what we have said above disposes of this appeal and we do not, of necessity, reach the appellant's second ground for reversal, it is apparent that it will again arise upon the retrial of this cause and a discussion thereof may facilitate the litigation. Prior to the institution of this suit the appellee and the appellant reached a settlement agreement and in consideration of $130.20 paid to her by the appellant she executed a release discharging him of and from all claims of any kind whatsoever growing out of any and all known and unknown, foreseen and unforeseen, bodily and personal injuries and the consequences thereof resulting or to result from the accident in controversy. The appellee contends that when this settlement agreement was reached and said release executed both she and the appellant believed that the fracture to her wrist had been set properly and was completely healed but the fact was that while her arm was in the cast the bone had slipped or shifted at the point of fracture and healed in mal-alignment which in the future was bound to give her pain and necessitate surgery. That the mutual mistake of the parties as to the actual condition of her wrist gave her the right to rescind the settlement agreement which she did and therefore the same constitutes no bar to this action. The appellant, while recognizing the doctrine of mutual mistake as applied to contracts, contends that there is no evidence in the present record which warrants its application to the release in suit.

There appears to be ample evidence that the appellee was mistaken as to the true condition of her wrist when she signed the release. The cast had been removed and her fingers were a little stiff but she suffered no pain. She had recently consulted her doctor who told her the wrist was or would be all right and advised her to

sign the release. There is also evidence tending to prove that at that time her fractured wrist had not healed normally but on the contrary the ends of the fractured bone were in such a degree of mal-alignment that surgery would ultimately be required. Nowhere, however, do we find any evidence tending to prove a corresponding mistake on the part of the appellant. As far as the evidence discloses he knew nothing concerning the condition of the appellee's wrist and entertained no ideas concerning the matter at the time the release was executed. Thus it would seem that the mistake that led to the execution of the release was unilateral and insufficient to make it voidable.

The appellee contends however that the true condition of her wrist was unknown to both parties and hence the damages resulting therefrom could not have entered into the settlement negotiations and there was not and could not have been any meeting of the minds in reference thereto. This contention does direct violence to the terms of the release contract which expressly discharges the appellant from all damages resulting from unknown bodily injuries in any manner growing out of the accident in controversy. The language of a release is important in determining the intention of the parties and, as a general rule, where the intention to settle for unknown injuries is clearly expressed, and there is no fraud or over-reaching involved, the release is a bar to recovery for injuries subsequently discovered. *Hanson* v. *Northern States Power Co.* (1936), 198 Minn. 24, 268 N. W. 642; *Berry* v. *Struble* (1937), 20 Cal. App. 2d 299, 66 P. 2d 746.

This court recently upheld the rescision of a release contract, somewhat similar to that here involved, be-

cause of a mutual mistake of fact by the parties. The case in mind is *Crane Company* v. *Newman* (1942), 111 Ind. App. 273, 37 N. E. 2d 732, where, at the time of the execution of the release involved, the plaintiff was suffering with a broken back of which neither of the parties was aware but otherwise his injuries were comparatively trivial. The mutual mistake that prompted the decision clearly appears from the fact that a physician, employed by the defendant to examine the plaintiff, concluded that the plaintiff's injuries were superficial and confined to his right knee and a right rib. He so advised the plaintiff who accepted such statement as the fact and on that understanding a settlement was reached. The evidence most favorable to the present appellee makes no such case. The most that can be said for it is that it shows an unilateral mistake which, as a matter of law, is insufficient to warrant a rescission of the release.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 115 N. E. 2d 504.