**INDIANA BELL TELEPHONE COMPA-NY, INC., Defendant-Appellant,**

v.

**Darl MYGRANT, Plaintiff-Appellee.**

No. 3–781A190.

Court of Appeals of Indiana,
Third District.

Oct. 25, 1982.

Rehearing Denied Jan. 17, 1983.

Jeffry G. Price, Peru, for defendant-appellant.

Edward S. Mahoney, Lacey, O'Mahoney, Mahoney, Angel & Jessup, Kokomo, for plaintiff-appellee.

GARRARD, Judge.

On January 17, 1980 Darl Mygrant was driving his automobile in Peru, Indiana. A vehicle owned by Indiana Bell and driven by one of its employees collided with Mygrant's automobile. Mygrant did not complain of any personal injury at that time. He was, however, concerned that his daughter had sustained injuries in the accident. Subsequently, an adjuster in the employ of Indiana Bell determined Mygrant's automobile was totalled. Mygrant asked for $900 compensation for the loss of the car and Indiana Bell offered $600.

On February 12, 1980 Mygrant and Indiana Bell executed a "release of all claims." [1]

---

1.     "RELEASE OF ALL CLAIMS

KNOW ALL MEN BY THESE PRESENTS:

That the Undersigned, being of lawful age, for sole consideration of Six Hundred 00/100

Dollars ($600.00) to be paid to Darl Mygrant do/does hereby and for my/our/its heirs, executors, administrators, successors and assigns release, acquit and forever discharge Indiana Bell Telephone Co. and his, her, their, or its

Pursuant to the terms of the release, Mygrant received a check for $600 payable to him and his attorney. The check on its face stated:

"In payment of all claims arising out of an accident on 1–17–80 at Peru, Indiana."

On its reverse side the check had this provision:

"The endorsement of this draft constitutes a complete release of all claims the payee has against Indiana Bell Telephone Company, Incorporated and/or its agents or employees on account of any and all matters and particularly the claim for which all payment is shown on the reverse side."

Mygrant and his attorney endorsed the check and cashed it.

In April or May of 1980 Mygrant became aware of personal injuries which he had sustained in the accident and notified Indiana Bell. Indiana Bell informed Mygrant that it was absolved from any liability by the terms of the release.

On October 16, 1980 Mygrant filed a complaint, alleging that as a proximate cause of Indiana Bell's negligence he suffered injuries which required surgery and resulted in a permanent impairment "to the extent of ten percent (10%) of his body as a whole." In its answer Indiana Bell raised the executed release as a defense. On January 21, 1981 Mygrant deposited the amount received pursuant to the release with the clerk of the court after Indiana Bell refused to accept a tender. Indiana Bell moved for summary judgment on February 17, 1981 alleging that no genuine issue as to any material fact existed because the terms of the release barred Mygrant from bringing suit.

On March 10, 1981 Mygrant filed a motion for partial summary judgment, moving the court "to enter Summary Judgment for the Plaintiff on the affirmative defense of release pleaded by the Defendant for the reason that there is no genuine issue as to the material fact that the purported release was executed through mutual mistake of fact, both parties believing at the time that Plaintiff had sustained no injury in the automobile accident of January 17, 1980."

The court held a hearing on the motions and denied both. The court, however, did order Mygrant to file a written reply specifically pleading those matters of purported mutual mistake which would negate the

agents, servants, successors, heirs, executors, administrators and all other persons, firms corporations, associations or partnerships of and from any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 17 day of January, 1980, at or near Peru, IN.

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace.

The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT. Signed, sealed and delivered this 12th day of Feb., 1980.

CAUTION: READ BEFORE SIGNING BELOW

/s/ Edward S. Mahoney        /s/ Darl G. Mygrant

Witness                                                    "

affirmative defense of release. Mygrant did so. Indiana Bell then filed a second motion for summary judgment. Mygrant moved to have Indiana Bell's motion stricken. The court subsequently denied both motions.

On July 15, 1981 Indiana Bell moved for certification of the trial court's interlocutory order which had denied its motion for summary judgment. The trial court certified for appeal its denial of the motion pursuant to Indiana Rules of Procedure, Appellate Rule 4(B)(6). We have accepted the certification in order to examine the effect of broad form releases under these circumstances.

Indiana Bell argues that Mygrant abandoned any claim for personal injuries when he executed the agreement. The terms of the release unequivocally discharged Bell from liability for the negligence of its employee. No genuine issue of a material fact exists regarding the facts and circumstances surrounding the execution of the written release. It urges that the effect of the release is a question of law and the law requires that summary judgment be granted in favor of Indiana Bell.

Mygrant, to the contrary, maintains he has a viable cause of action for personal injury. He argues that he and Indiana Bell were acting on the belief of a mutual mistake when the release was executed since both parties were unaware of Mygrant's personal injuries. He is entitled to rescind the release and pursue his cause of action because of the mutual mistake. He also contends that the parties' intent was to effect a release only of Mygrant's claim for property damages, and not any claim for personal injury.

Considerable case law exists in other jurisdictions on the issue of whether a person is bound by the terms of a general release which he executed without knowledge of the existence or severity of his injuries. In Indiana two cases, *Gumberts v. Greenberg* (1953), 124 Ind.App. 138, 115 N.E.2d 504; and *Crane Co. et al. v. Newman* (1941), 111 Ind.App. 273, 37 N.E.2d 732, have dealt with the legal ramifications of general releases executed in fact situations similar to the present case. The parties cite primarily to these two Indiana opinions. We have reviewed the case law in other jurisdictions as well in our search for the proper legal and equitable result in this case. First we examine the Indiana cases relied upon by the parties.

Indiana Bell cites *Gumberts* as authority for its position that the release bars Mygrant from bringing suit. In *Gumberts* a tenant suffered a fractured wrist when she fell in the driveway of her apartment. She received medical treatment and after the cast was removed her doctor told her the wrist would be "all right." Based on this diagnosis she entered into a settlement agreement with her landlord. In consideration for a payment of $130 the tenant executed a release discharging the landlord:

"... from all claims of any kind whatsoever growing out of any and all known and unknown, foreseen and unforseen, bodily and personal injuries and the consequences thereof resulting or to result from the accident in controversy."

115 N.E.2d at 506. The tenant then learned corrective surgery would be required because the wrist had not properly healed. She filed suit against the landlord and a jury awarded her $1200.

On appeal the award was reversed and a new trial ordered because the evidence failed to disclose whether the landlord had agreed to repair the alleged defective condition which had caused the tenant's fall. Because the legal import of the release would be at issue upon retrial, the appellate court determined its effect upon the parties.

The tenant contended that she could rescind the release because the parties were mistaken as to the actual condition of her wrist when the release was executed. The court recognized that contracts entered into based on mutual mistake are voidable. However, it found that only the tenant was under a mistake when the release was executed.

"Nowhere, however, do we find any evidence tending to prove a correspond-

ing mistake on the part of the appellant. As far as the evidence discloses he knew nothing concerning the condition of the appellee's wrist and entertained no ideas concerning the matter at the time the release was executed. Thus it would seem that the mistake that led to the execution of the release was unilateral and insufficient to make it voidable."

115 N.E.2d at 507.

Indiana Bell contends it is entitled to summary judgment based on the facts and holding in *Gumberts.*

Mygrant in his argument looks to the holding in *Crane Co. et al. v. Newman* (1941), 111 Ind.App. 273, 37 N.E.2d 732. In *Crane* the court found a release was voidable because it was based on mutual mistake. The facts therein disclose that Newman fell in an elevator shaft due to the negligence of Crane. Crane requested that Newman be examined by a particular physician. The physician informed Newman that he was not suffering from any serious injury. Based on the diagnosis by Crane's physician, Newman signed a release in return for a settlement of $140. Newman later discovered that he had sustained a broken back and injured vertebrae in the fall. Newman then filed suit and alleged that the release was voidable because it was based on mutual mistake. A jury returned a verdict of $10,000 in favor of Newman. On appeal the court affirmed stating:

> "In considering the question of the release pleaded by appellant, we think the case falls within the rule as stated in the case of *St. Louis-San Francisco Ry. Co. v. Cauthen,* 112 Okl. 256, 241 P. 188, 48 A.L.R. 1447, which is stated as follows: 'A mutual mistake of fact should justify the rescission of a release, executed under the belief that injuries are trivial and temporary, when as a matter of fact they are serious and permanent in their nature, where it appears that the purpose of the release was to compensate for apparent injuries, known injuries, and that serious or permanent injuries were not contemplated by the parties at the time of the execution of the agreement or release, although in its terms the agreement or release is broad enough to cover all injuries, resulting from the particular incident.'

> In arriving at a conclusion as to whether or not there was a mutual mistake as alleged by appellee, all of the circumstances relating to the signing must be taken into consideration and the sum paid for such release is also a matter for consideration. Negotiations for an adjustment were first suggested by appellant, and appellee thereupon in a very frank statement informed them what his injuries were. The only injuries mentioned in his correspondence to appellant were to his right knee, right ribs and left hip. The examination by the doctor employed by appellant brought to light no further injuries. No objection is raised to the amount of recovery in this case, being in the sum of $10,000, and it would seem most inequitable that for the sum of $140 it was intended by both parties or by either party to compensate for a broken back. The question in this case relative to the release is whether the minds of the parties met upon the understanding that the payment and acceptance of the consideration were in settlement of the injuries set out in the complaint."

37 N.E.2d at 738, 9.

The courts in *Gumberts* and *Crane* observed that a releasor may rescind a release which was executed because of a mutual mistake. Mygrant argues that the present facts fall within this rule; Bell asserts Mygrant's mistake was unilateral and does not constitute a proper basis for rescission.

Our review of the case law, including that from other jurisdictions, and of the other authorities persuades us that mutual versus unilateral mistake is not a very helpful means of analysis in these cases.[2] As the author observes in CORBIN ON CONTRACTS (1952) § 608, pp. 556, 557:

> "Statements are exceedingly common, both in texts and in court opinions, that

2. Admittedly it is one repeatedly engaged in.

*See, e.g.,* annot., 71 A.L.R.2D 82.

relief will not be given on the ground of mistake unless the mistake is 'mutual.' Such a broad generalization is misleading and untrue. Seldom is it accompanied by either definition or analysis. A study of thousands of cases is not necessary to convince us that to err is human, both in the sense of having mistaken ideas and in the sense of performing acts that are evil or unwise. But such a study will show that human mistakes are of great variety in kind with a great variety of causes, that they have a great variety of results, and that the juristic effects vary as the combinations of factors vary.

Cases do not always submit readily to be classified with either 'mutual mistake' or 'unilateral mistake.' And even when they do submit, the solution does not mechanically follow in accordance with a separate set of rules for each class. Very often relief has been and will be, granted where the mistake is unilateral. And relief is not necessarily granted, even though the mistake is mutual. It depends very materially upon the form of relief sought. Reformation is often refused on the ground that the mistake was not 'mutual,' when the correct reason is that the parties never agreed upon any terms other than those in the erroneous writing. In such cases the appropriate remedy is rescission or cancellation, unless there is sufficient basis for an estoppel.

"As we have seen in other connections, the term 'mutuality' has an appeal that must not be overlooked, even though it has blinded us at times to facts and reality. The idea behind the term is of importance; but it is not one that lends itself easily to the statement of broad principles and just working rules. Statements are very numerous to the effect that the mistake of only one of the parties to a contract is not a ground for relief either at law or in equity. Such a statement can be accepted only in case the party seeking relief proves no more than that his action was induced by his erroneous thought. The statement will seldom be found in cases in which relief is granted;

in the cases refusing relief and making the statement as a reason for so doing, the court has always considered and weighed the additional factors that accompanied the mistake.

The distinction between 'mutual' mistake and 'unilateral' mistake has some importance. In the matter of the remedy to be granted, it may be a decisive factor. But we must not begin with any broad generalizations based upon this distinction. We must not say that relief will be denied unless the mistake is 'mutual'; or that a 'unilateral' mistake does not affect the validity of a contract. Every attempt at a generalization or stated rule must take into account a variety of factors and must be limited to some particular combination of them.

The American Law Institute states the law to be that a contract is not made voidable by a unilateral mistake, however material it may be to the interests of the mistaken party. Without doubt, this has been the prevailing form of statement, along with the even more common form that mistake is not operative unless it is mutual. It is supported by some decisions and by many dicta; but the decisions that are inconsistent with it are too numerous and too appealing to the sense of justice to be disregarded.

It must be borne in mind, however, that the circumstances accompanying the mistake must always be considered, just as they were considered by the former courts of Chancery. It has never been asserted, and it is not being asserted here, that a party ever makes out a sufficient case for relief, either affirmative or defensive, by merely proving that he was caused to execute a deed or to make a promise by the fact that he had a mistaken thought. Many of the pertinent factors have been listed in the first section of this chapter. No one of them can be said to be absolutely necessary for the granting of relief; the combination of factors existing in the specific case must be considered. Here are two of the more important factors: Did the other party

participate either intentionally or innocently in causing the mistake? Is it still possible to restore the other party to his original position?"

(footnotes omitted)

We may venture the observation that courts often grant relief on the basis of mutual mistake when, in fact, the parties were only mutually ignorant of the releasor's injuries. *See, e.g., Meyer v. Murray* (1979), 70 Ill.App.3d 106, 26 Ill.Dec. 48, 387 N.E.2d 878. Parties who are mutually ignorant of the releasor's actual injuries are not necessarily mutually mistaken when the release is executed.

■ A tortfeasor seeks a release in order to obtain a settlement of potential liability and put an end to further claims. The fact that the releasor has unknown injuries does not mean that either he or the releasee are mistaken in the sense that but for the lack of knowledge the release would not be given. On the contrary the essence of the releasee's position is often that the true nature of the releasor's injuries are superfluous and irrelevant to the "agreement" being reached, i.e., that in exchange for a consideration paid at the time the parties have elected to agree to make their peace despite any questions that may factually exist concerning both liability and damages. To this extent then, ignorance of the extent of the releasor's injuries may be said to never constitute a mistake on the part of the releasee which is relevant and material to the terms of the contract.

Conversely, as the Minnesota Supreme Court observed in *Barilla v. Clapshaw* (1976), 306 Minn. 437, 237 N.W.2d 830, 832:

"To say that a mistake as to the true extent of injuries will avoid a release of claims for unknown injuries is tantamount to saying that parties can never have an enforceable contract for settlement and release of these injuries."

■ It is an axiom of contract law that in order to have a binding agreement there must be a meeting of the minds. In the commercial arena this question of mutual assent is resolved by objective standards according to the manifestation (usually by words) of the parties' intention. *Rutter v. Excel Industries, Inc.* (1982), Ind.App., 438 N.E.2d 1030; 17 Am.Jur.2d, *Contracts* § 19. Application of that rule to the case before us would lead us to examine no more than the unmistakeably all-inclusive language employed in the form of release. Yet the sense of justice referred to by Corbin, *supra,* certainly involves more than a search for canny draftsmanship.

As the authors point out in Calamari and Perillo, The Law of Contracts at 305:

"A release of a personal injury claim is not a commercial transaction. Social policies favoring the assumption of entrepreneurial risks as a means of improving market efficiency are not present. Instead, a policy of adequate compensation for injury tortiously done is strong. Boilerplate release forms releasing all injuries, known and unknown, present and future are not automatically honored."

Our Supreme Court has recognized the impact of the public policy attending tort claims upon "pure" contract law in these circumstances. Thus, in *Wecker v. Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132 the court, answering a certified question of law from the Seventh Circuit, stated that a release given to one tortfeasor did not as a matter of law bar the releasor's claim against an alleged subsequent tortfeasor for aggravating the original injury, despite the language in the release that it was intended to release the parties named "and any and all other persons, firms and corporations, whether herein named or referred to or not." [3]

The court observed that:

"Two factors should be controlling in determining the effect of an agreement purporting to operate as a release:

(1) Whether the injured party has received full satisfaction; and

---

**3.** *See also Cooper v. Robert Hall Clothes, Inc.* (1979), Ind., 390 N.E.2d 155 where the court applied tort law policy to negate the contractual provision of a release which purported to expressly reserve the right to sue a joint tortfeasor.

(2) Whether the parties *intended* that the release be in full satisfaction of the injured party's claim, thus releasing all successive tortfeasors from liability. Both are questions of fact and normally to be determined by the jury. The actual form or title of the release is immaterial and parol evidence should be permitted to determine the intent of the parties.

'A release ought to be construed from the stand-point which the parties occupied at the time of its execution. To enable a court to so construe a release, extrinsic evidence is admissible to explain the circumstances under which it was executed, and the nature of the transaction to which it was designed to apply ....' *Rowe v. Rand* (1887), 111 Ind. 206, 211, 12 N.E. 377, 380."

260 Ind. at 203, 294 N.E.2d at 135 (citations omitted).

■ This viewpoint, that the actual intention of the parties should be treated as a question of fact to be ascertained from all the surrounding circumstances, has been applied by a number of courts to the question of *whether the parties intended the release to cover unknown injuries.* If it was their intent the release will be binding. If it was not, then the release may be avoided. *See, e.g., Schmidt v. Smith* (1974), 299 Minn. 103, 216 N.W.2d 669; *Finch v. Carlton* (1974), 84 Wash.2d 140, 524 P.2d 898; *Mangini v. McClurg* (1969), 24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386; *Casey v. Proctor* (1963), 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579; *Denton v. Utley* (1957), 350 Mich. 332, 86 N.W.2d 537.

We are persuaded that this provides a more equitable and better reasoned approach to the problem.[4] It is an approach approved in *Wecker v. Kilmer, supra.*

The courts in *Finch v. Carlton, supra,* and *Schmidt v. Smith, supra,* enumerated several factors which we agree are proper considerations in determining the validity and extent of a release. They are:

(1) The amount of consideration received compared with the risk of the existence of unknown injuries;

(2) The presence of bargaining and negotiation leading to the settlement;

(3) The closeness of the issue of liability;

(4) Whether the subject of personal injuries was discussed;

(5) The reasonableness of the contention that the injuries were in fact unknown at the time the release was executed;

(6) The competence of the releasor and the equality of bargaining positions and relative intelligence of the contracting parties;

(7) The haste, or lack thereof, with which the release was obtained, i.e., the length of the period between injury and settlement;

(8) The amount of time elapsed between the settlement and the attempt to avoid the settlement;

(9) The presence or absence of independent medical advice of releasor's own choice before or at the time of settlement;

(10) The presence or absence of legal counsel of the releasor's own choice before or at the time of settlement;

(11) Whether the injury subsequently complained of by the releasor was an unknown injury at the time of signing or merely an unknown consequence of a known injury;

(12) The language of the release itself;

(13) The peculiar dignity and protection to which the law cloaks the human person, as contrasted with articles of commerce.

We recognize that in the given case many of these considerations may appear neutral. We do not suggest, either, that they are exhaustive. The issue is one of fact, to be determined from the circumstances surrounding the settlement and release. If there was in reality a mutual assent, the

---

4. We exclude from consideration but recognize a separate line of cases where the issue urged is that a release was procured by fraud or misrepresentation.

parties did in fact intentionally agree upon a settlement for unknown injuries and such a release will be binding. On the other hand if such a release was not fairly and knowingly made it is subject to avoidance.

It follows that the action of the trial court in refusing to grant the motion for summary judgment before it was correct. This cause is now remanded to the court for further proceedings consistent with the views expressed herein.

Affirmed and remanded.

STATON, J., concurs.

HOFFMAN, P.J., dissents and files separate opinion.

HOFFMAN, Presiding Judge, dissenting.

I must respectfully dissent from the position taken by the majority in this case. A compromise and release of claims is entered into by the parties in the interest of compensating the injured party while avoiding the costly and time consuming process of litigation. The rationale posited by the majority would render releases worthless as a method for attaining those goals. A person should not be allowed to set aside a release or force the released party to go to the expense of a trial, merely by claiming the release was entered into by mistake. The Appellate Court of Illinois has addressed this issue by noting that:

"It has always been the policy of the [common] law to favor compromise and settlement, and it is especially important to sustain that principle in this age of voluminous litigation, particularly in traffic cases. . . . If a release, completely effective in the form in which it is executed, is to be lightly disregarded, then the peaceful settlement of claims out of court becomes practically impossible."

Thomas v. Hollowell (1959) 20 Ill.App.2d 288, at 290, 155 N.E.2d 827, at 829.

It is established by Indiana case law that a release is voidable when based on a mutual mistake. The majority would have us believe that there is a factual question as to the existence of such a mistake in this case. However, Indiana cases hold otherwise.

The leading case in Indiana establishing that a mutual mistake renders a release voidable is *Crane Company v. Newman* (1941) 111 Ind.App. 273, 37 N.E.2d 732. However, *Crane* was decided on a much narrower fact situation than that present in the case at bar.

In *Crane* the plaintiff was injured on the defendant's premises. The defendant requested that the plaintiff be examined by a doctor who informed both parties that plaintiff's injuries were minor. A general release was signed which plaintiff subsequently attempted to have set aside when it was discovered he suffered a broken back. The court held that the release was voidable because it was based on a mutual mistake as both parties had been misinformed by the doctor.

In the case at bar there was no representation to the appellant about Mygrant's injuries. Mygrant made no attempt to be examined by a doctor. In fact Mygrant's situation more nearly parallels the facts of *Gumberts v. Greenberg* (1953), 124 Ind.App. 138, 115 N.E.2d 504.

In *Gumberts,* the plaintiff, who was a tenant of the defendant, was injured on his premises. She was treated for a broken arm. While the arm was healing she signed a general release in return for payment of her medical bills. It was subsequently discovered that her arm had not healed properly. Presented with additional medical expenses the plaintiff attempted to have the release set aside. The Court upheld the release. Since no representations had been made to defendant about the condition of plaintiff's arm, the only party mistaken was the plaintiff.

In fact the same arguments raised by Mygrant were raised in an earlier Indiana case. *Hoeger v. Citizens St. R. Co.* (1905), 36 Ind.App. 662, 76 N.E. 328. In *Hoeger* the plaintiff's wagon was damaged and his horse and family were injured when struck by the defendant's streetcar. The plaintiff negotiated a compromise and signed a general release. Upon realizing that the money was insufficient to provide care for his

seriously injured son, Hoeger attempted to have the release set aside. Hoeger, like Mygrant in this case, claimed the release was meant to pertain only to the property damage claim. The Court upheld the release stating that Hoeger could have read the release and refused to sign it until a settlement to his liking was negotiated. Having failed to do this he was therefore bound by his actions since he was the only party mistaken as to the significance of the release.

Like Hoeger, Mygrant claims the release at issue was meant to apply only to the property damage claim. The only evidence forwarded by Mygrant, other than his testimony, is an unsworn statement purported to have been made by Terry Feightner, an adjuster for the appellant's insurer. In this statement Feightner clearly states that the release was intended to be a "full and final settlement of the *bodily injury and property damage claim.*" (Emphasis added.) *Record* at 86. This statement hardly provides support for Mygrant's contention.

One final point addressed to the majority's mention of the rationale in *Wecker v. Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132. While discussing *Wecker* as support for the rationale in this case, the majority fails to note that the reasoning of *Wecker* has been applied to reach the opposite result in more factually analogous situations. *Rose v. Rose* (1979), Ind.App., 385 N.E.2d 458; *Lazarrus v. Employers Mut. Cas. Co.* (1977), 173 Ind.App. 452, 364 N.E.2d 140.

In *Lazarrus,* Judge Garrard, writing for the majority, upheld a trial court's grant of summary judgment applying the *Wecker* rationale. The defendant in *Lazarrus* insured plaintiff's truck which was damaged in a fire. Upon payment for the damages plaintiff signed a release of the defendant. Delays in repair of the truck cost plaintiff additional expense which he attempted to recover from defendant. The defendant was granted a summary judgment upholding the release as an affirmative defense to plaintiff's claims. Judge Garrard concluded that unlike *Wecker* there was no question as to whom the release was intended to apply.

Similarly in this case there is no question as to whom the release was intended to apply. Mygrant, with the benefit of counsel, signed a general release of the appellant Indiana Bell Telephone. Likewise, there is no question as to what claims the release was intended to apply. The only evidence forwarded by Mygrant in support of his claim is an unsworn statement which supports appellant's argument. As in *Gumberts* and *Hoeger* there is no mutual mistake. There were no representations of Mygrant's condition made to appellant.

Since there was no factual question before the trial court regarding the release, the court should have granted the summary judgment. I would reverse the decision of the trial court.