INDIANA BELL TELEPHONE
COMPANY, INC., Appellant
(Defendant Below),

v.

Darl MYGRANT, Appellee
(Plaintiff Below).

No. 1184S468.

Supreme Court of Indiana.

Nov. 30, 1984.

Jeffry G. Price, Peru, for appellant.

Edward S. Mahoney, Lacey, O'Mahoney, Mahoney, Angel & Jessup, Kokomo, for appellee.

PRENTICE, Justice.

This cause is before us on the petition of Indiana Bell Telephone Co., Inc. (Appellant/Defendant) to transfer the cause from the Court of Appeals, Third District, following its affirmance (Judge Hoffman, dissenting) on appeal of the interlocutory order of the trial court denying summary judgment in favor of Indiana Bell. Inasmuch as the decision of the Court of Appeals, reported at 441 N.E.2d 481, conflicts with other decisions of that court, as hereinafter set forth, the petition to transfer is now granted, and the decision and opinion of the Court of Appeals is vacated. At issue is whether an unambiguous, straightforward release of all claims for personal injuries, untainted by misrepresentation, fraud, overreaching, concealment, or persuasion on the part of the party released, may be avoided by the releasing party, who later discovers injuries of which he was unaware when the release was executed.

The Court of Appeals summarized the facts and proceedings in the trial court as follows:

"On January 17, 1980 Darl Mygrant was driving his automobile in Peru, Indiana. A vehicle owned by Indiana Bell and driven by one if its employees collided with Mygrant's automobile. Mygrant did not complain of any personal injury at that time. He was, however, concerned that his daughter had sustained

injuries in the accident. Subsequently, an adjuster in the employ of Indiana Bell determined Mygrant's automobile was totalled. Mygrant asked for $900 compensation for the loss of the car and Indiana Bell offered $600.

"On February 12, 1980 Mygrant and Indiana Bell executed a 'release of all claims.' [1]

Pursuant to the terms of the release, Mygrant received a check for $600 payable to him and his attorney. The check on its face stated:

"'In payment of all claims arising out of an accident on 1–17–80 at Peru, Indiana.'

On its reverse side the check had this provision:

'The endorsement of this draft constitutes a complete release of all claims the payee has against Indiana Bell Telephone Company, Incorporated and/or its agents or employees on account of any and all matters and particularly the claim for which all payment is shown on the reverse side.'

Mygrant and his attorney endorsed the check and cashed it.

"In April or May of 1980 Mygrant became aware of personal injuries which he had sustained in the accident and notified Indiana Bell. Indiana Bell informed Mygrant that it was absolved from any liability by the terms of the release.

"On October 16, 1980 Mygrant filed a complaint, alleging that as a proximate cause of Indiana Bell's negligence he suffered injuries which required surgery and resulted in a permanent impairment 'to the extent of ten percent (10%) of his body as a whole.' In its answer Indiana Bell raised the executed release as a defense. On January 21, 1981 Mygrant deposited the amount received pursuant to the release with the clerk of the court after Indiana Bell refused to accept a tender. Indiana Bell moved for summary judgment on February 17, 1981 alleging that no genuine issue as to any material fact existed because the terms of the release barred Mygrant from bringing suit.

"On March 10, 1981 Mygrant filed a motion for partial summary judgment, moving the court 'to enter Summary Judgment for the Plaintiff on the affirmative defense of release pleaded by the Defendant for the reason that there is no genuine issue as to the material fact that the purported release was executed through mutual mistake of fact, both parties believing at the time that Plaintiff had sustained no injury in the automobile accident of January 17, 1980.'

"The court held a hearing on the motions and denied both. The court, however, did order Mygrant to file a written reply specifically pleading those matters of purported mutual mistake which would negate the affirmative defense of release. Mygrant did so. Indiana Bell then filed a second motion for summary judgment. Mygrant moved to have Indiana Bell's motion stricken. The court subsequently denied both motions.

"On July 15, 1981 Indiana Bell moved for certification of the trial court's interlocutory order which had denied its motion for summary judgment. The trial court certified for appeal its denial of the motion pursuant to Indiana Rules of Procedure, Appellate Rule 4(B)(6).

---

"[1]. RELEASE OF ALL CLAIMS
KNOW ALL MEN
BY THESE PRESENTS:

That the Undersigned, being of lawful age, for sole consideration of Six Hundred 00/100 Dollars ($600.00) to be paid to Darl Mygrant do/does hereby and for my/our/its heirs, executors, administrators, successors and assigns release, acquit and forever discharge Indiana Bell Telephone Co. and his, her, their, or its agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensations whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which oc-

curred on or about the 17 day of January, 1980, at or near Peru, IN.

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace.

The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT. Signed, sealed and delivered this 12th day of Feb., 1980.

CAUTION: READ BEFORE SIGNING BELOW

/s/ Edward S. Mahoney    /s/ Darl G. Mygrant
    Witness                                  , "

441 N.E.2d at 481–483.

The Court of Appeals, upon its determination that a genuine issue of fact existed as to the intention of the parties when they executed the release, affirmed the trial court's denial of the motion for summary judgment. In its petition to transfer Indiana Bell argues, and we agree, that as a matter of law, the executed release was enforceable on its face and, consequently, summary judgment in Indiana Bell's favor should have been granted.

Mygrant argues that he is entitled to rescind the release and proceed against Indiana Bell because, at the time the release was executed, he and Indiana Bell's representative were unaware that he had sustained any injuries in the accident. Hence, he urges that the release may be avoided because of mutual mistake. He further argues that both parties intended to release only his claim for property damage and not any claim for personal injury.

Two Indiana cases, *Gumberts v. Greenberg,* (1953) 124 Ind.App. 138, 115 N.E.2d 504, and *Crane Co. et al. v. Newman,* (1941) 111 Ind.App. 273, 37 N.E.2d 732, are factually similar to the case at bar and discuss the legal effect of having executed a release. In *Gumberts,* a tenant sued her landlord following a fall on the driveway to her apartment whereby she broke her wrist. Subsequently, relying upon her doctor's statement that she was "all right," she and the landlord entered into a settlement agreement by which the landlord paid the tenant $130.20 and she executed a release "discharging him of and from all claims of any kind whatsoever growing out of any and all known and unknown, forseen and unforseen, bodily and personal injuries and the consequences thereof resulting or to result from the accident in controversy." *Gumberts v. Greenberg,* 124 Ind.App. at 144, 115 N.E.2d at 506. The tenant then discovered that her wrist had not healed properly and that corrective surgery was necessary. She filed suit against the landlord, and a jury awarded her $1200. The Court of Appeals reversed the case on other grounds but discussed the effect of the release for purposes of retrial. The tenant argued that at the time the parties executed the release both believed that the fracture to her wrist had been properly treated and had completely healed. Hence, she argued that the mutual mistake of the parties as to the actual condition of her wrist gave her the right to rescind the release. The Court of Appeals determined that only the tenant was acting under a mistaken belief when she signed the release. The court noted:

"Nowhere, however, do we find any evidence tending to prove a corresponding mistake on the part of the appellant. As far as the evidence discloses he knew nothing concerning the condition of the appellee's wrist and entertained no ideas concerning the matter at the time the release was executed. Thus it would

seem that the mistake that led to the execution of the release was unilateral and insufficient to make it voidable."

*Id.* at 145, 115 N.E.2d at 507.

In *Crane,* the plaintiff, Newman, fell in an elevator shaft on defendant's premises. Crane requested that Newman be examined by a particular physician, who informed both Newman and Crane that Newman's injuries were only minor. Based upon this diagnosis, Newman signed a release in return for a settlement of $140. Subsequently, Newman discovered that he had sustained a broken back and injured vertebrae in the fall. He filed suit and alleged that the release was voidable because it was based on mutual mistake. The Court of Appeals agreed and affirmed a jury verdict in favor of Newman stating:

> " 'A mutual mistake of fact should justify the rescission of a release, executed under the belief that injuries are trivial and temporary, when as a matter of fact they are serious and permanent in their nature, where it appears that the purpose of the release was to compensate for apparent injuries, known injuries, and that serious or permanent injuries were not contemplated by the parties at the time of the execution of the agreement or release, although in its terms the agreement or release is broad enough to cover all injuries, resulting from the particular incident.'
>
> "In arriving at a conclusion as to whether or not there was a mutual mistake as alleged by appellee, all of the circumstances relating to the signing must be taken into consideration and the sum paid for such release is also a matter for consideration. Negotiations for an adjustment were first suggested by appellant, and appellee thereupon in a very frank statement informed them what his injuries were. The only injuries mentioned in his correspondence to appellant were to his right knee, right ribs and left hip. The examination by the doctor employed by appellant brought to light no further injuries. No objection is raised to the amount of recovery in this case, being in the sum of $10,000, and it would

seem most inequitable that for the sum of $140 it was intended by both parties or by either party to compensate for a broken back. The question in this case relative to the release is whether the minds of the parties met upon the understanding that the payment and acceptance of the consideration were in settlement of the injuries set out in the complaint."

111 Ind.App. at 290, 37 N.E.2d at 738–739.

Both *Gumberts* and *Crane* stand for the proposition that a release may be rescinded if it is executed as a result of a mutual mistake as to a material matter. The Court of Appeals, however, in its review of this case, determined that "mutual versus unilateral mistake is not a very helpful means of analysis in these cases" and employed an analysis set forth in *Wecker v. Kilmer,* (1973) 260 Ind. 198, 294 N.E.2d 132. In *Wecker,* this Court responded to a certified question of law from the Seventh Circuit and stated that a release given to one tortfeasor did not as a matter of law bar the releasing party's claim against an alleged subsequent tortfeasor (a treating physician) for aggravating the original injury. The Court determined that two factors, which are ordinarily questions of fact, control the effect of an agreement which purports to operate as a release: "(1) Whether the injured party has received full satisfaction; and (2) Whether the parties *intended* that the release be in full satisfaction of the injured party's claim, thus releasing all the successive tortfeasors from liability." *Id.* at 203, 294 N.E.2d at 135. We do not believe that the analysis employed in *Wecker* is appropriate under the facts of this case and, in fact, have held that that analysis should be confined to cases involving successive tortfeasors. *See Bellew v. Byers,* (1979) 272 Ind. 37, 39, 396 N.E.2d 335, 337 ("*Wecker* ... is limited to the situation where there are independent and successive tortfeasors.") and *Rose v. Rose,* (1979) 179 Ind.App. 299, 302, 385 N.E.2d 458, 460 ("*Wecker* is inapplicable where a single tortfeasor is involved[.]")

■ We are aware of a developing trend in some courts by which a release of personal injury claims may be avoided when the court finds that to uphold it would present an unconscionable result; *see* 13 A.L.R. 4th 686 (1982) however, in light of the important policy of upholding releases in order to facilitate the orderly settlement of disputes, we decline to join in that trend. Indiana courts have previously employed the traditional unilateral versus mutual mistake means of analysis in cases such as this, and we see no reason to depart from it at this time. Thus, we turn to the question of whether the situation in the case at bar presents us with a mistake such as to vitiate the release.

■ A mutual mistake is one which involves both parties—a mistake independently made by each party. *Automobile Underwriters, Inc. v. Smith,* (1956) 126 Ind.App. 332, 337, 133 N.E.2d 72, 75. In the case at bar, we find that the mistake, if any, was Mygrant's alone, and we hold that such a unilateral mistake of fact is insufficient to avoid the release. We find no evidence to indicate that, at the time the release was executed, Indiana Bell's representative harbored any belief whatsoever regarding Mygrant's injuries or lack thereof. It is clear from the language of the release that the parties agreed that the release was to apply to unknown as well as known injuries, to personal injuries as well as property damage. Both Mygrant and his attorney signed the release and the ensuing settlement check. It seems apparent that Indiana Bell wanted to be released from any and all liability as a consequence of the accident. Parties involved in accidents engage in negotiations because of the incertitude as to the extent of injuries or liability, or both, and because of the uncertainty as to the outcome of any litigation which might ensue. Clearly, Indiana Bell desired an expeditious settlement and, in the terms of the release, intended "to avoid litigation and buy ... peace." As noted by the Missouri Supreme Court in *Sanger v. Yellow Cab Co., Inc.,* (1972) Mo., 486 S.W.2d 477, 481–482:

"Releases do not make settlement and take general releases merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more if his injuries prove serious. On the contrary, a settlement is made and a general release taken for the purpose of foreclosing further claims. The releasee does not stand in a fiduciary relation to the releasor. The injured party is not required to make a settlement, and the general rule of freedom of contract includes the freedom to make a bad bargain."

It cannot be said that Bell would not have entered into the agreement if it had known of Mygrant's injuries. Nor has Mygrant alleged any fact from which it may be concluded that the parties executed the release based upon a mutual mistake of material fact.

In that Indiana Bell had no independent knowledge of Mygrant's physical condition, this case is readily distinguishable from *Crane.* In *Crane,* both parties had been misinformed as to the extent of the plaintiff's injuries by a doctor chosen by the defendant. The defendant apparently accepted such statement as fact, and a settlement was reached. Here, however, there is no mutual reliance on medical advice.

Because we find no evidence in the record to sustain a finding of mutual mistake, the release may not be avoided. There being no genuine issue of material fact, the trial court erred in denying Indiana Bell's motion for summary judgment, and the Court of Appeals erred in affirming that judgment. Transfer is granted; the decision of the Court of Appeals is vacated, and this case is remanded to the trial court with instructions to enter summary judgment in favor of Indiana Bell.

GIVAN, C.J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents without opinion.