Oscar **HYBARGER** and Margaret **Hybarger, Plaintiffs-Appellants,**

v.

**AMERICAN STATES INSURANCE CO., Edward M. Plant and Carol Plant, Defendants-Appellees.**

No. 54A01–8602–CV–35.

Court of Appeals of Indiana, First District.

Oct. 23, 1986.

Rehearing Denied Dec. 4, 1986.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, for plaintiffs-appellants.

Kent O. Stewart, Catharine H. Stewart, Stewart, Reeder, Due & Miller, Indianapolis, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants, Oscar and Margaret Hybarger (the Hybargers), appeal a judgment of the Montgomery Circuit Court in favor of defendants-appellees, American States Insurance Co., et al. (American States).

We affirm.

## STATEMENT OF THE FACTS

On August 13, 1982, while on her way to a bank to make a deposit for her employer, Mrs. Hybarger stumbled over a raised portion of the sidewalk and fell to the ground. In falling, most of Mrs. Hybarger's weight landed on her left wrist and arm. She was taken by ambulance to the local hospital, where she was met by her family physician, Dr. Eggers, who ordered x-rays of her left wrist and arm. After examining the x-rays, Dr. Eggers explained to Mrs. Hybarger that she had suffered a lengthwise fracture of the ulna bone near the wrist. He also told her that, given her age and the type of fracture, the injury could result in arthritis. Other than that, Dr. Eggers indicated that the fracture would heal without complications. He then placed Mrs. Hybarger's arm in a cast, and instructed her to return to the hospital in five or six weeks to have the cast removed.

Mrs. Hybarger had fallen in front of a building owned by Edward and Carol Plant. Upon being told of the accident by bystanders, the Plants contacted their insurer, American States, through its local agent, the McCormick-Metsker Agency. A claims representative, Terry Smith, was assigned to investigate the accident and make a determination of the liability of American States.

Meanwhile, Mrs. Hybarger contacted the Lindley and Johnson Agency, the local agent for her employer's workmen's compensation carrier, since the accident had occurred while she was on an errand for her employer. The Lindley and Johnson representative took Mrs. Hybarger's statement and gave her some forms to complete in order for her to receive workmen's compensation benefits.

On August 26, 1982, Terry Smith telephoned Mrs. Hybarger and tape recorded her account of the accident, which included the fact that she had been on an errand for her employer, the nature and extent of her injuries, and the possibility that arthritis might result from the fracture. Mrs. Hybarger also expressed her desire to be compensated for pain, suffering, and the inconvenience of wearing a cast for five or six weeks. Smith asked her for an amount, but Mrs. Hybarger said she would like to discuss it with Mr. Hybarger. Smith agreed to meet them both in person the next day.

At this meeting, Smith told the Hybargers that the medical expenses could be paid under the medical-paid coverage in the Plants' policy. This type of coverage allows the payment of medical expenses of someone injured on the premises without regard to the question of the storeowner's liability. Smith accepted their figure of $350.00 as representing the medical expenses they had incurred and expected to incur. Mrs. Hybarger then stated that she and her husband had decided that $1,000.00 would adequately compensate her for the pain, suffering, and inconvenience. Smith then wrote a check in the amount of $1,350.00. In return for this sum, Smith produced a document entitled "FULL AND FINAL RELEASE." He gave it to the Hybargers for them to read and sign, offering to answer any questions they might have. The Hybargers asked no questions and signed the release form. Smith gave them the $1,350.00 check and departed.

Mrs. Hybarger returned to Dr. Eggers at the end of the six-week period and the cast

was removed. X-rays revealed that the arm was not healing properly. A removable cast was placed on the arm to allow Mrs. Hybarger to soak her arm periodically. After another six weeks had passed, Dr. Eggers told Mrs. Hybarger that, although her arm still caused her great pain, it was just a slow healing process.

In November 1982, on the advice of a therapist, Dr. Eggers referred Mrs. Hybarger to a hand specialist. This doctor found damage not identified by Dr. Eggers; specifically, crushed bones, nerve damage, and disconnection of the cartilage and ligaments in the wrist from the arm. Nerve treatments were begun immediately and hand surgery was performed in December 1982. Mrs. Hybarger continued therapy but complications developed, requiring additional surgery in September 1983. Her wrist is still not functional, and she has only limited movement in her fingers, although she continues to undergo therapy.

Upon learning that a release had been signed, Mrs. Hybarger's employer's workmen's compensation carrier not only stopped the payment of benefits, it demanded reimbursement of payments already made. The carrier asserted that Mrs. Hybarger's signing of the release canceled its duty to pay benefits because her non-cooperation resulted in the loss of its subrogation rights against American States. The Hybargers tendered the $1,350.00, plus interest, to American States, but it refused acceptance.

On September 30, 1983, the Hybargers brought a declaratory judgment action against American States, seeking to avoid the release on the basis of mutual mistake. A bench trial was held on September 6, 1984. The Hybargers testified that mutual mistakes were made as to material facts in that both parties held an erroneous belief as to not only the extent of Mrs. Hybarger's injuries, but also the effect of the release on the workmen's compensation benefits. Terry Smith, testifying for American States, stated that he had had no independent knowledge of Mrs. Hybarger's injuries, but relied on what she had told him. He also stated that there had been no discussion of the release's effect on workmen's compensation benefits because he was unaware of Mrs. Hybarger's eligibility for such payments.

The trial court entered its findings and conclusions on July 12, 1985. It determined the language in the release to be "clear and unambiguous" as to what the parties intended. The trial court also concluded that Smith had not misled the Hybargers and the mistake was solely Mrs. Hybarger's. It entered a judgment for American States.

The Hybargers filed a motion to correct error on September 10, 1985, which was denied on January 10, 1986. The Hybargers then filed this appeal.

## ISSUES

The issues presented are as follows:

I. Whether the trial court erred in failing to find a mutual mistake which would warrant a rescission of the release.

II. Whether the trial court erred in finding the language of the release to be clear and unambiguous.

III. Whether the trial court's judgment is contrary to law.

## DISCUSSION AND DECISION

ISSUE I: *Mutual Mistake*

The Hybargers assert the existence of mutual mistakes as to material facts that warrant the rescission of the release. Specifically, they claim that both parties held a mistaken belief as to the extent of Mrs. Hybarger's injuries. They also claim that they and Terry Smith were mistaken as to the effect of the release on her workmen's compensation benefits, and allege that Smith's professed ignorance of these benefits amounts to a breach of duty.

■ Our supreme court, in an opinion that we believe to be controlling authority here, recently stressed the important policy of upholding releases in order to facilitate the orderly settlement of disputes.

*Indiana Bell Telephone Co., Inc. v. Mygrant* (1984), Ind., 471 N.E.2d 660. However, a release may be rescinded if it is executed as a result of a mutual mistake as to a material matter. *Id.* A mutual mistake is one which involves both parties, a mistake independently made by each party. *Automobile Underwriters, Inc. v. Smith* (1956), 126 Ind.App. 332, 133 N.E.2d 72.

The case of *Gumberts v. Greenberg* (1953), 124 Ind.App. 138, 115 N.E.2d 504, relied upon in *Mygrant, supra,* is factually very similar to the instant case. In *Gumberts,* a tenant sued her landlord following a fall on the driveway to her apartment, whereby she broke her wrist. Relying upon her doctor's statement that she was "all right," she and the landlord entered into a settlement agreement by which the landlord paid the tenant $130.20 and she executed a release. The tenant then discovered that her wrist had not healed properly and that corrective surgery was necessary. She filed suit against the landlord, and a jury awarded her $1,200.00. On appeal, the tenant argued that the mutual mistake of the parties as to the actual condition of her wrist gave her the right to rescind the release. The court of appeals reversed on other grounds but discussed the effect of the release. In determining that only the tenant was acting under. a mistaken belief when she signed the release, the court noted:

> "Nowhere, however, do we find any evidence tending to prove a corresponding mistake on the part of the appellant. As far as the evidence discloses he knew nothing concerning the condition of the appellee's wrist and entertained no ideas concerning the matter at the time the release was executed."

*Id.* at 145, 115 N.E.2d at 507.

▮ In the case at bar, Terry Smith had no independent knowledge of or belief in the nature and extent of Mrs. Hybarger's injuries. He accepted as true the information she related to him. In their telephone conversation on August 26, Smith inquired as to the extent of Mrs. Hybarger's injuries and was told of her fracture and the possibility that arthritis could result from it, as well as the bruises and lacerations to her knee and shoulder. In addition, she informed him of the minimal property damage she had sustained in the accident. The mistake was unilateral on the part of Mrs. Hybarger.

The situation before us differs in a significant respect from a case cited by the Hybargers, *Crane Co. et al. v. Newman* (1941), 111 Ind.App. 273, 37 N.E.2d 732, a case which was distinguished in *Mygrant, supra.* In *Crane,* the plaintiff, Newman, fell in an elevator shaft on the defendant's premises. Crane Co. requested that Newman be examined by a doctor, employed by Crane Co., who informed *both parties* that Newman's injuries were minor. When a subsequent examination disclosed serious injuries, Newman filed suit and successfully voided the release on the basis of mutual mistake. The court of appeals affirmed the result because both parties had independent knowledge of erroneous material facts. Such is not the case here. Again, all of the information received by Smith came from Mrs. Hybarger. Her knowledge came, not from a doctor employed by American States, but from Dr. Eggers, Mrs. Hybarger's family physician. Here there was no mutual reliance on medical advice; therefore, the holding in *Crane, supra,* is inapplicable.

The Hybargers also claim that both parties were mistaken as to the effect of the release on her workmen's compensation benefits, and allege that Terry Smith's professed ignorance of those benefits amounts to a breach of duty.

▮ At the trial, Smith and the Hybargers testified that the subject of workmen's compensation benefits never arose in their discussions concerning the release. Smith stated that although Mrs. Hybarger told him that she had been on an errand for her employer at the time of the accident, he never considered her eligibility for workmen's compensation because he believed her only claim was against American States. Smith also testified that when Mrs. Hybarger mentioned her "report to the in-

surance company" during their telephone conversation, he assumed she was referring to the McCormick-Metzker Agency, the local agent for American States, and not her employer's workmen's compensation carrier. Again, for a mistake to be mutual it must be made independently by both parties. *Automobile Underwriters, supra.* As the issue of workmen's compensation was never discussed or considered, we fail to see how a mistake was made.

We also fail to see how the failure to discuss workmen's compensation amounts to a breach of duty by Smith. Case law has consistently held that a releasee does not stand in a fiduciary relation to the releasor. *Mygrant, supra* at 664; *see also Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349 at 364. The evidence also fails to disclose any misconduct on the part of Smith. He accepted at face value the information from Mrs. Hybarger as to her injuries and expenses; the subject of compensating Mrs. Hybarger for her pain, suffering, and inconvenience was initiated by the Hybargers, as was the amount to be paid for them. At their personal meeting, Smith urged them to read the release and offered to answer questions concerning it; the Hybargers asked no questions. Finally, at trial, both Hybargers attested to the fact that Smith behaved "like a gentleman" and did not subject them to "high pressure." Indeed, Smith thought it unusual that anyone would settle a claim while still wearing a cast, but the Hybargers were anxious to "put the matter to rest" because they were about to go on a vacation. Based on this evidence, we do not believe that American States committed any misconduct.

Because the mistakes were solely the Hybargers', the release can not be avoided on the basis of mutual mistake.

ISSUE II: *Clear and Unambiguous Release*

The Hybargers argue that the trial court erred in finding that the language of the release was "clear and unambiguous." Specifically, they assert that, because the release does not include a reference to "un-known injuries," the release does not cover injuries discovered subsequent to its execution.

Release agreements and contracts generally are interpreted as a matter of law. *English Coal Co., Inc. v. Durcholz* (1984), Ind.App., 422 N.E.2d 302, *trans. denied.* In interpreting contracts, courts will attempt to determine the intent of the parties as disclosed by the language used to express their rights and duties. *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291, *trans. denied.*

The document at issue here is entitled "FULL AND FINAL RELEASE." By its terms it releases:

" ... all claims and causes of action on account of personal injuries and any and all other loss and damage of every kind and nature caused by or resulted or hereafter resulting to the undersigned from an accident which occurred on or about the 13th day of August 1982, at Crawfordsville, Indiana, and of and from all claims ... which the undersigned ... can, shall, or may have by reason of or in any way incident to or resulting from the accident hereinbefore mentioned and from the beginning of the world to the day of the date of these presents...."

Although the words "unknown" or "unforeseen" are not in the document, it is clear from the language of the release that the parties agreed that it was to apply to unknown as well as known injuries. As the supreme court wrote in *Mygrant, supra* at 664.

"Releases [sic] do not make settlement and take general releases merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more if his injuries prove serious. On the contrary, a settlement is made and a general release taken for the purpose of foreclosing further claims." (Citations omitted.)

**ISSUE III:** *Judgment Contrary to Law*

The Hybargers' final argument is that the judgment of the trial court in favor of American States is contrary to law. Specifically, they argue that the holding in *Mygrant, supra,* is inapplicable here as there is sufficient evidence in the record to establish mutual mistake.

In determining whether a negative judgment is contrary to law, this court will neither weigh the evidence nor judge the credibility of the witnesses; we will only consider the evidence favorable to the prevailing party together with all reasonable inferences flowing therefrom. *Indiana-Kentucky Electric Corp. v. Green* (1985), Ind.App., 476 N.E.2d 141, *trans. denied.*

Given our disposition of the issue pertaining to mutual mistake, we conclude that the judgment is not contrary to law. Accordingly, the judgment is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.