**BOARD OF COMMISSIONERS OF the COUNTY OF ALLEN, Defendant-Appellant,**

**v.**

**Ernie JONES, in his official capacity as president of the Indiana State AFL–CIO; Fred Rice, in his official capacity as a member of the Committee for a Prevailing Wage Scale; Laborers Local Union No. 213; Operating Engineers Local No. 103; and Teamsters Local Union No. 414, Plaintiffs-Appellees.**

**No. 3–1282A347.**

Court of Appeals of Indiana, Third District.

Dec. 15, 1983.

G. William Fishering, III, Allen County Atty., Fort Wayne, for defendant-appellant.

William R. Groth, Fillenwarth Dennerline & Groth, Indianapolis, for plaintiffs-appellees.

GARRARD, Judge.

This is an appeal from an order granting an injunction against the Board of Commissioners of Allen County ("Board").

The controversy began April 16, 1982. The Board was preparing to award contracts for the demolition of thirty-four structures in Allen County. As the execu-

tive agency for the county, the Board is authorized to award contracts for county improvements. IC 36–2–2–1; IC 36–2–3.5–1; IC 36–2–3.5–4(b)(9) and (10). The demolition contracts involved public works subject to the provisions of the Prevailing Wage Statute, IC 5–16–7–1 to IC 5–16–7–5.[1] IC 5–16–7–1 describes "prevailing wage" and the procedure for its ascertainment:

"Any firm, individual, partnership or corporation which is hereafter awarded a contract by this state, or by any political subdivision thereof, or by a municipal corporation, for the construction of any public work, and any subcontractor thereon, shall be required to pay for each class of work on such project a scale of wages which shall in no case be less than the prevailing scale of wages being paid in the immediate locality for such class of work as hereinafter to be determined. For the purpose of ascertaining what the prevailing wage scales are in such immediate locality, the awarding governmental agency, prior to advertising for such contract, shall set up a committee of three (3) persons; one (1) representing labor, to be named by the president of the state federation of labor; one (1) representing industry, to be named by the awarding agency, and a third member to be named by the governor. As soon as appointed said committee shall meet and shall fix and determine in writing as follows: A classification of the labor to be employed in the performance of the contract for such project, into three (3) classes: skilled, semiskilled and unskilled labor, and the wage per hour to be paid each of such classes: Provided, That the rate of wages so to be fixed and determined shall not exceed the prevailing wage scales being at the time paid in such locality for such class of work: Provided further, That the provisions of this chapter shall not apply to contracts let by the department of highways for the construction of highways, streets and bridges. The provisions of IC 8–13–5–8 do apply on state highway projects. Such determination shall be made and filed with such awarding agency at least two (2) weeks prior to the date fixed for such letting, and a copy thereof shall be furnished upon request to any person desiring to bid on such contract. Said schedule shall be open to the inspection of the public. If such committee fails to act and to file such determination at or before the time hereinbefore provided, the awarding agency shall make such determination, and its finding shall be final. It shall be a condition of such contract that the successful bidder and all of his subcontractors shall comply strictly with such determination made as above provided. None of the provisions of this section, however, shall be interpreted as permitting the payment of wages for skilled, semiskilled or unskilled labor on any such public project in this state the letting of which is subject to the provisions hereof which are less than the minimum provided for in the applicable national code of fair competition, or regional agreement approved by the president of the United States if there be any such: Provided further, That the provisions of this chapter shall not apply to any such public projects in this state the letting of which would otherwise be subject to the provisions hereof, and which are to be paid for in whole or in part with funds granted by the federal government, unless the depart-

1. IC 5–16–7–4 defines a public work as follows: "The term 'public work' shall be construed to include any public building, highway, street, alley, bridge, sewer, drain, improvement or any other work of any nature or character whatsoever which is paid for out of public funds, excepting as herein otherwise provided." The statute also defines "municipal corporation": "The term 'municipal corporation' shall be construed to include any county, city, town, or school corporation, as well as any officer, board, commission or other agency authorized by law to award contracts for the performance of public work on behalf of any such municipal corporation." The Board is, of course, an agency of such a "municipal corporation." The requirement that contracts for public works conform to the prevailing wage statute is also found at IC 36–1–12–15.

ment of the federal government making such grant shall consent in writing that the provisions of this chapter shall be applicable to such project."

A committee was created: Sue Stone, an employee of the Division of Labor, was the governor's appointee. Fred Rice, business manager of the Allen County Building Trades Council, was the AFL–CIO's representative. There was a third member representing the Board. The committee met on April 16, 1982. Stone presided. The Board's representative presented three letters. The letters were from three county demolition contractors, Earth Construction & Engineering, Inc., Martin Enterprises, Inc., and Griffin Enterprises, Inc. Each letter set forth the wage rates used in demolition projects. The rates were presented as being representative of the rates prevailing in the area. Rice submitted wage scales being paid in the area "pursuant to privately-negotiated collective bargaining agreements."

Stone concluded that Rice's submission most accurately represented the prevailing wage for area construction workers. Although she considered the contractors' letters, she found each inapposite: Earth Construction's rates were from a two year old contract and, as such, dated. Martin Enterprises' rates were from a State Highway Department project. Since the Highway Department is not subject to the prevailing wage statute, Stone found this submission inapplicable. And Griffin Enterprises' submission was based upon what it considered "rates ... more realistic ... than the union wages ... which we [now] pay." Based partly upon her knowledge of wages in the construction industry and "partly upon the personal knowledge that this same wage scale had been paid on numerous other public work projects in the locality," Stone adopted Rice's submitted wage rates. Rice concurred. The remaining member of the committee, the Board's appointee, voted against adopting Rice's wage rates.

On April 23, 1982 the Board met and declared the prevailing wage adopted by the committee void. According to the Board, the wage was void for several reasons:

1. It was not concurred upon by all three (3) committee members.
2. There was no basis in fact for "[the] determination, ... making [it] arbitrary and capricious."
3. The committee failed to comply with the Indiana "Open Door Law."
4. The statute is unconstitutional.

The Board then proceeded to establish its own wage determinations for the demolition projects. The Board's wage determinations were made "a part of the specifications for the demolition projects" and included in the advertisements for bids.

On May 14, 1982 several parties joined in filing a complaint for "temporary restraining order, preliminary and permanent injunction and declaratory judgment." The plaintiffs were three Allen County labor organizations and Ernie Jones, in his capacity as president of the Indiana AFL–CIO. The complaint sought to prevent the Board from awarding contracts based upon the Board's prevailing wage. In this regard, the complaint asked that the Board be enjoined from awarding any contracts for demolition, and asked that the Board's wage determination be declared "null, void, and ... in violation of IC 5–16–7–1." The Board answered, and raised as an affirmative defense its contention that IC 5–16–7–1 was unconstitutional. The Board also counterclaimed. It asserted that the committee met "and continues to meet in violation of the Indiana 'Open Door Law' IC 5–14–1.5–1 et seq." Therefore, the Board asked "that all decisions made by the prevailing wage committee ... [in meetings] in violation of the Indiana 'Open Door Law' be declared void, and ... that said committee be enjoined from meeting in violation of said law."[2]

2. Governor Robert D. Orr was also named as a defendant, as "the person responsible by statute for appointing the third person to the prevailing wage committee." Governor Orr, through the

Attorney General's office, twice moved to dismiss the complaint. The State is not a party in this appeal.

The cause was heard May 20, 1982. On July 7, 1982 the court entered judgment for Jones and the labor organizations: "The Court ... grants the injunctive relief prayed, and defendants herein are enjoined from awarding any contract or contracts for ... demolition ... containing the defendant's wage specifications at variance with the statutory committee's recommendations." The court also entered findings of fact, among them the following:

"7) The wage determinations made by a majority of the three members of the prevailing wage committee were arrived at after due consideration of all evidence presented before said committee, including evidence submitted by defendant Board's representative from three local contractors who have performed projects of a similar nature, and the evidence submitted by plaintiff Rice, consisting of the wage rates paid to certain classifications of workers pursuant to collective bargaining agreements negotiated by and between certain contractors and various local labor organizations. Defendant Board based its incorporated wage scales on data and information solicited by it from area demolition firms."

The court also entered the following conclusions:

"1) As stipulated by the parties at trial, plaintiffs Jones and Rice have standing to maintain this action for declaratory and injunctive relief.

2) The prevailing wage determinations made by two of the three members of said prevailing wage committee were binding upon defendants Board and Commissioners pursuant to I.C. 5–16–7–1, were not made arbitrarily or capriciously, and were made after an investigation of the facts as they existed in the locality in which the contracts were to be awarded.

3) The action by defendants Board and Commissioners in making their own wage determinations for said demolition projects notwithstanding the wage determinations by said prevailing wage committee, is hereby declared to be null, void and not in compliance with I.C. 5–16–7–1.

4) The Indiana prevailing wage statute, I.C. 5–16–7–1 et seq. is deemed by this court as constitutional, (the question of constitutionality having been raised); it does not require a municipality to pay a certain wage established by the state legislature nor does it mandate that a municipality require a private contractor performing public work pay a certain legislatively established wage. Rather, the Prevailing Wage Statute establishes a procedure whereby the prevailing wage committee determines for an immediate locality, after a factual investigation, a prevailing wage for that specific locality, as to the project contemplated.

5) Based on the above conclusions, the court finds for the plaintiffs, and the defendant Board and Commissioners are hereby preliminarily and permanently enjoined from awarding any contract for the demolition of said thirty-four (34) structures in Allen County containing said wage specifications which the court has hereinabove determined are not in compliance with the statutes."

The Board appeals the judgment, raising three issues:

1. Is IC 5–16–7–1 et seq. constitutional, either as violating Article 1, Sections 1 and 23 of the Indiana Constitution or as representing an improper delegation of legislative authority to an administrative body?

2. Were the actions of the committee in setting the prevailing wage for the demolition projects arbitrary and capricious?

3. Are meetings of the prevailing wage committee subject to the requirements of IC 5–14–1.5–1 et seq., so that determinations made in non-com-

pliance with the statute are null and void?

## I.

The Board argues that IC 5–16–7–1 is unconstitutional under either of two theories. The first theory is that the statute offends Article 1, Section 1 and Article 1, Section 23 of the Indiana Constitution. The second theory is that the statute represents "an improper delegation of legislative authority to an administrative body."

Article 1, Section 1 of the Indiana Constitution provides:

"WE DECLARE, That all men are created equal; that they are endowed by their Creator with certain unalienable rights; that among these are life, liberty and the pursuit of happiness; that all power is inherent in the People; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the People have, at all times, an indefeasible right to alter and reform their government."

Article 1, Section 23 provides:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The Board's contention that the statute violates the provisions of these two articles is based solely upon *Street v. Varney Electrical Supply Company* (1903), 160 Ind. 338, 66 N.E. 895. *Varney* involved a challenge to the constitutionality of a precurser statute, Acts 1901, p. 282, Sections 7055a–7055b (Burns 1901). The statute read as follows:

"Section 1. That from and after the passage of this act, unskilled labor employed upon any public work of the State, counties, cities, and towns, shall receive not less than twenty cents an hour for said labor, which may be enforced in a proper action, and in case a suit shall be necessary for the recovery of the compensation herein provided for, and where the compensation is recovered, the person suing shall recover also a reasonable attorney's fee, together with a penalty not exceeding double the amount of wages due: Provided, that boards of commissioners, common councils of towns or cities are prohibited from making contracts with such laborers by the week, or any definite length of time wherein a price is agreed upon at a rate less than as provided herein. Section 2. Any contractor or other person in charge of public work of the State, counties, cities or towns, whose duty it is to contract with, employ and pay the unskilled labor on such public work, who shall violate the provisions of Section 1 of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not exceeding $10, to which may be added imprisonment in the county jail not exceeding thirty days."

The Varney Electric Supply Company refused to pay twenty cents an hour for unskilled labor, asserting that the requirement was an unconstitutional interference with its "liberty to contract." On appeal, the Indiana Supreme Court held the act unconstitutional, as offending the Fourteenth Amendment to the United States Constitution and Article 1, Sections 1 and 23 of the Indiana Constitution. The court based its conclusion upon the following characterization of "counties, cities and towns":

"While the counties, cities, and towns are political and municipal subdivisions of the State, they are not governmental agencies in such sense as to subject the management of their local affairs, involving the making of contracts for labor and materials to be used upon local improvements, and the payment for the same out of the revenues of the county, city or town, to the arbitrary and unlimited control of the legislature. They are corporations as well as political and governmental subdivisions and agencies, and, as such corporations, they have the power to make contracts by which the rate of

compensation for property sold to them is fixed. With regard to such contracts for the purchase of property or the employment of labor, counties, cities, and towns stand much upon the same footing as private corporations; and they can not be compelled by an act of the legislature to pay for any species of property more than it is worth, or more than its market value at the time and in the place where it is contracted for. The power to confiscate the property of the citizens and taxpayers of a county, city, or town, by forcing them to pay for any commodity, whether it be merchandise or labor, an arbitrary price, in excess of the market value, is not one of the powers of the legislature over municipal corporations, nor the legitimate use of such corporations as agencies of the State.... [A]n act fixing the price of unskilled labor on all public works at not less than twenty cents an hour is a legislative interference with the liberty of contract by counties, cities, and towns, which finds no sanction or authority in the doctrine that counties, cities, and towns are municipal and political subdivisions of the State."

160 Ind. at 342–43, 66 N.E. 895.

Based upon this characterization of "the several municipal governments of the state" as functionally indistinguishable from private entities, the Court found that the act denied due process and represented "obnoxious ... class legislation." 160 Ind. at 347, 66 N.E. 895. The denial of due process was twofold: Public corporations were denied their liberty to contract, citizens were deprived of their property by being required to sponsor higher wages on public improvements, and the statute's classification of unskilled labor at the expense of "all other laborers" was irrational and unconstitutional.

*Varney* was handed down on April 1, 1903.[3] Several months later, on November 30, 1903, the United States Supreme Court decided *Atkins v. Kansas*, 191 U.S. 207, 24

S.Ct. 124, 48 L.Ed. 148. *Atkins* involved a challenge to a Kansas statute which provided, in significant part, "not less than the current rate of per diem wages in the locality where ... work is performed shall be paid to laborers, workmen, mechanics and other persons employed by or on behalf of the State of Kansas, or any county, city, township or other municipality of said State." 191 U.S. at 208, 24 S.Ct. at 124. The statute was challenged as violating the Fourteenth Amendment to the U.S. Constitution by denying due process and by enacting "class legislation." *Varney* was an authority relied upon by the appellant. The Supreme Court, however, disagreed. The Court found that municipal corporations "are, in every essential sense, only auxiliaries of the State." 191 U.S. at 220, 24 S.Ct. at 126. The Court then commented that work undertaken by such auxiliaries is "of a public, not private, character." From that it follows that "the statute ... in its application to those undertaking work ... on behalf of a municipal corporation ... does not infringe the personal liberty of anyone." 191 U.S. at 220, 24 S.Ct. at 126.

"It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the State .... We rest our decision upon the broad ground that the work being of a public character, absolutely under the control of the State and its municipal agents ... it is for the State to prescribe the conditions under which it will permit work of that kind to be done."

191 U.S. at 222, 224, 24 S.Ct. at 127, 128. The Kansas statute upheld in *Atkins* differed from the Indiana statute struck down in *Varney* in that the former did not distinguish between skilled and unskilled labor, and the wage to be paid to each.

*Atkins* has been followed by courts in a number of jurisdictions. *See* Annot., 18

**3.** As a parallel historical note it may be recalled that *Muller v. Oregon,* 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551, upholding as constitutional social

legislation limiting women's hours of work, was not decided until 1908.

A.L.R.3d 944. Additionally, there are federal statutes with analogous provisions concerning prevailing wages. 41 U.S.C. Section 35 et seq.; 40 U.S.C. Section 276a et seq. *See also Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. Though the precise issue has not been addressed in this state since *Varney,* we find that IC 5–16–7–1 et seq. suffers from none of the constitutional infirmities urged upon us by the Board.

 Statutes are presumed to be constitutional and grounded in rationality, and one opposing this presumption must affirmatively demonstrate that constitutional defects are "clearly apparent." *Board of Commissioners of Howard County v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92, 96; *Hanley v. State of Indiana* (1954), 234 Ind. 326, 123 N.E.2d 452, 126 N.E.2d 879. When the challenge is to a statutory classification, the petitioner must demonstrate that the classification is arbitrary or capricious or does not bear a reasonable relation to the legislative objective if he is to prevail. *Winney v. Board of Commissioners of County of Vigo* (1977), 174 Ind.App. 624, 369 N.E.2d 661, 665; *Forks v. City of Warsaw* (1971), 257 Ind. 237, 273 N.E.2d 856, 858, *cert. denied* 409 U.S. 841, 93 S.Ct. 39, 34 L.Ed.2d 80. *See also Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; *Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989; *Evansville-Vanderburgh Levee Authority District v. Kamp* (1960), 240 Ind. 659, 168 N.E.2d 208.

 The Board has not discharged its obligation. It has not demonstrated either that IC 5–16–7–1 et seq. contains an arbitrary and capricious classification or that its classificatory scheme bears no reasonable relationship to a legitimate legislative objective. We have already noted that similar statutes have been found to be constitutionally acceptable by other jurisdictions. Annot., 18 A.L.R.3d 944. IC 5–16–7–1 et seq. provides for the determination of the prevailing wage appropriate for "skilled, semiskilled and unskilled labor," respec-

tively. This differentiation eliminates any reliance upon the objection sustained in *Varney,* that there is an unreasonable discrimination between skilled and unskilled labor. Since the Board offers no particularization of constitutional defects, we find that its first argument is without merit. This conclusion is made all the more compelling by the Indiana Supreme Court's holding in *Bd. of Commr's. of Howard Co., supra,* that neither Article 1, Section 1 nor Article 1, Section 23 is available to a municipal corporation, "in this case, a county." 330 N.E.2d at 100.

 The Board's second theory as to why IC 5–16–7–1 et seq. is unconstitutional is that the statute represents "an improper delegation of legislative authority to an administrative body." We disagree. "The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." *Richardson v. State* (1981), Ind., 429 N.E.2d 229, 228; *Blue v. Beach* (1900), 155 Ind. 121, 56 N.E. 89. The legislature may delegate authority to an administrative agency if the legislature lays down a reasonable standard to guide the exercise of that authority. 429 N.E.2d at 228; *Kryder v. State* (1938), 214 Ind. 419, 15 N.E.2d 386; *State ex rel. Standard Oil Co. v. Review Bd.* (1951), 230 Ind. 1, 10, 101 N.E.2d 60, 64. So long as such a standard is provided, the agency may properly determine the existence of facts or "what is or … is not reasonable under the particular facts." 429 N.E.2d at 229; 230 Ind. 10; *Steup v. Indiana Housing Finance Authority* (1980), Ind., 402 N.E.2d 1215, 1227–28; *Edwards v. Housing Authority of City of Muncie* (1939), 215 Ind. 330, 339, 19 N.E.2d 741, 746.

We find the present statute a valid delegation of authority to determine what is, and is not, reasonable under a particular set of facts. IC 5–16–7–1 provides that the prevailing wage committee shall determine a "classification of the labor to be employed … into three … classes: skilled,

semiskilled and unskilled labor, and the wage per hour to be paid each of such classes." The statute also provides that the wages so determined shall not exceed the wages prevailing in the locality "for such class of work," nor may they be "less than the minimum provided for in the applicable national code of fair competition, or regional agreement approved by the president of the United States if there be any such." IC 5–16–7–1. We find that these provisions create the standard required for a valid delegation of authority. We note that other, similar prevailing wage statutes have survived unlawful delegation challenges. *See generally* 18 A.L.R.3d 944 Section 8; *West Ottawa Public Schools v. Babcock* (1981), 107 Mich.App. 237, 309 N.W.2d 220; *Mahin v. Myers* (1969), 108 Ill.App.2d 416, 247 N.E.2d 812; *Anderson v. County of Jo Daviess* (1980), 81 Ill. App.3d 354, 401 N.E.2d 265. Because IC 5–16–7–1 et seq. does not arm the committee "with a high-powered vehicle but no road map," it does not represent an improper delegation of legislative authority to the prevailing wage committee. 230 Ind. at 10, 101 N.E.2d 60.

■ The Board argues that "the committee acted in an arbitrary and capricious manner in establishing the prevailing wage scale for the demolition project." The argument is based upon the Board's assertion that "the evidence ... upon which the wage committee based its determination was not sufficient."

"Arbitrary and capricious action by an administrative agency is action taken, in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion." *Indiana Civil Rights Commission v. Sutherland Lumber* (1979), Ind.App., 394 N.E.2d 949, 957; *Gary Transit, Inc. v. Public Service Commission of Indiana* (1974), 161 Ind.App. 7, 314 N.E.2d 88, 91; *State Board of Tax Commissioners v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.* (1951), 121 Ind.App. 302, 96 N.E.2d 279, 282. The Board contends that the present commit-

tee's actions were arbitrary and capricious because they resemble actions condemned in *Committee for Prevailing Wage Scale v. Zeller* (1965), 140 Ind.App. 478, 208 N.E.2d 697. *Zeller* involved an earlier version of the prevailing wage statute, Acts 1935, c. 319 Section 1. Section 53–301 et seq. Burns Indiana Statutes Annotated (1951 Replacement). The school district of Butler, in DeKalb County, initiated a prevailing wage committee to ascertain the appropriate wage to be paid in constructing an addition to a school library. The committee met. The representatives of the governor and of labor approved and signed a wage scale submitted by the latter. The third member refused to sign the approved scale, presenting and signing another lower scale. Both scales were submitted to the school corporation, which adopted its own scale. The contract was let and construction proceeded, being completed by the time the controversy came to trial.

The committee filed an action seeking a declaratory judgment "determining the requirements of a valid determination of a prevailing wage scale." By the time the cause came before the trial court, the addition was completed. The court therefore dismissed the cause as moot. The dismissal was affirmed by the appellate court. In dicta, however, the appellate court expressed the following opinion:

"This court is inclined to the view that the said committee appointed to establish the wage scale for the various classifications of labor failed to execute its duties by not making an investigation of the facts as they then existed and upon which to predicate a determination thereof. Each committee member, in his own way, the evidence indicates, proceeded to act without regard to the other members of the said committee. [The labor representative] presented at the meeting of the committee a wage scale to which [the governor's representative] agreed. There appears to have been no real investigation in the locality and conclusions

based upon such investigation to support the majority report."

208 N.E.2d at 703. The court continued:

"We express the view also that *State ex rel. Cedar Creek School Township v. Curtin et al.* (1940), 217 Ind. 190, 26 N.E.2d 909, and the language therein used is applicable to the case at bar and that it alone would support our decision when applied to the facts herein, namely, that a majority of the committee appointed acted arbitrarily and capriciously as the trial court could have found from the evidence or proper, legitimate and natural inferences therefrom flowing."

208 N.E.2d at 704.

Like *Zeller, Curtin* was the result of a school district's desire to build an addition. The statute involved was the same as that in *Zeller,* Acts 1935, c. 319 Section 1. A prevailing wage committee was formed and met. The representatives of labor and of the governor introduced a wage scale. The remaining member introduced a lower wage scale.

"The complaint alleged that the defendants ... made no investigation to ascertain the scale of wages paid and prevailing in the immediate locality of Lowell in Lake County, Indiana, refused to hear any facts concerning the scale of wages paid in that community, and submitted and filed a scale of wages prevailing in another and different community, which scale was substantially higher than the one prevailing in Lowell and is set out in full in the complaint; that the two members knew or should have known, by proper investigation, that the schedule signed and submitted by them was not the prevailing wage scale then being paid in that locality; that the scale so presented by the two members was made by them arbitrarily and capriciously, without any justification therefor, and was not made in conformity to the statute creating the committee and defining and designating its duties."

208 N.E.2d at 704.

The trial court sustained demurrers to the complaint. The Indiana Supreme Court reversed that action and remanded for further proceedings. The Supreme Court found that the representatives of labor and of the governor had "arbitrarily and capriciously submitted a scale of wages not prevailing in the immediate vicinity of Lowell." 217 Ind. at 194, 26 N.E.2d 909.

*Curtin* and *Zeller* indicate that it is arbitrary and capricious for a prevailing wage committee to make its determination in disregard of facts relevant to that determination. "[A] prevailing wage scale concurred in by two of the three members of the committee [is] the legally established prevailing wage scale" so long as it is based upon an investigation into the pertinent facts. 1954 Opinion of the Attorney General No. 26. Our review of the record in this case convinces us that the committee herein did investigate the pertinent facts before arriving at its decision.

It is true that the present facts are superficially similar to the facts of *Curtin* and *Zeller.* In all three instances the prevailing wage committee concluded by adopting the wage scale submitted by the labor representative. However, in the present case the committee did consider evidence submitted as indicating what the determination should be. The Board presented the committee with three letters from local contractors describing the rates each paid for demolition work. Rice presented a proposal containing "those rates ... currently paid in union contracts in the Allen County and surrounding areas." Sue Stone testified at the May 20, 1982 proceedings that she examined the Board's letters but found them insufficient to support a finding that the wages prevailing in Allen County were markedly lower than those indicated in Rice's proposal. Stone discussed each of the three letters in detail, demonstrating how each was deficient. Stone commented that "I did give them consideration certainly but I didn't think that they should be used to determine the wage rates in the area."

The three letters were the only evidence presented by the Board. When Jack Dunifon, a member of the Board, was asked

whether "any other evidence [was] presented ... to support any contention that a majority of the ... demolition work in this area is done at lower wage rates than that proposed by Mr. Rice," he replied:

"It was not presented at the meeting, but I might say that most of these properties are owned by some individuals. They don't want to take it upon themselves to tear the property down, so they let us do it, but when they discover the prices that they are going to have to pay, they come in and say, we will tear it down, and it's taken off of the contract, because they can get it done conservatively less than what it's going to cost them if we do it."

Dunifon then conceded that "to the extent that the work is done and funded by public funds compliance is expected with the prevailing wage scale." Dunifon admitted that the wages paid on five previous demolition projects had been those submitted by an AFL–CIO representative.

The problematical determinations in *Curtin* and in *Zeller* were made with no regard for wage rates prevailing in the locality. In *Curtin* the wage determination was demonstrably inappropriate. In *Zeller* the lack of inquiry into local conditions was immediately apparent. Such is not the situation in the present case. Instead, it appears that the committee made a good faith effort to determine what wages were locally prevalent. It is equally clear that the wages eventually chosen by the committee were not "willful and unreasonable action without consideration and in disregard of the facts or circumstances." *State Board of Tax Commissioners v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.* (1951), 121 Ind.App. 302, 309, 96 N.E.2d 279, 282. Therefore, the committee's actions were not arbitrary and capricious, as argued.

### III.

The Board's final argument is as follows: The Prevailing Wage Committee is an agency subject to the provisions of the Indiana Open Door Law, IC 5–14–1.5–1 et seq. The April 16, 1982 meeting of the committee which is the subject of this dispute was not held in compliance with the statute. Therefore, the action of the committee in setting the wage for the demolition projects is "null and void."

We need not reach the merits of the argument because we find that the Board lacks standing to raise the issue. IC 5–14–1.5–7 of the statute provides that "[a]n action may be filed *by any citizen of this state* ... to enjoin ... violations of this chapter, or to declare void any action taken ... in violation of ... this chapter." As we noted earlier, in our discussion of the Board's challenge to the constitutionality of the Prevailing Wage Statute, the Board is not a "citizen" of this state. *Board of Commissioners of Howard County v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92, 100. Therefore, the Board lacked standing to bring an action alleging a violation of the statute. Accordingly it suffered no legal harm from the trial court's ruling.

The judgment is affirmed.

HOFFMAN, P.J., and STATON, J., concur.