**STAMPCO CONSTRUCTION CO., INC.,**
**Everett Stamper,**
**Appellants–Defendants,**

v.

**W. Keith GUFFEY, Wendell Guffey,**
**Appellees–Plaintiffs.**

No. 18A02–8911–CV–584.[1]

Court of Appeals of Indiana,
First District.

May 30, 1991.

1. This case was reassigned to this office on     January 2, 1991.

Frank E. Spencer, Indianapolis, for appellants-defendants.

Michael H. Duckett, Public Defender's Office, Lafayette, for appellees-plaintiffs.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Stampco Construction Co., Inc. and Everett Stamper (collectively "Stampco") appeal an adverse judgment in an action for damages resulting from payment of less than the prevailing scale of wages for performance of public works. We affirm.

## ISSUES [2]

We restate the issues presented upon appeal as:

1. Whether a private cause of action exists under the federal or Indiana prevailing wage statutes.

2. Whether an employee may waive the benefit of the prevailing wage statutes by an agreement for wages less than the prevailing wage rate or by a release.

3. Whether liquidated damages under IND.CODE § 22-2-5-2 were appropriate and whether the awards were excessive.

## FACTS

W. Keith Guffey (Keith) and Wendell Guffey (Wendell) were both employees of Stampco between July 1984 and October 1985, who performed work under contracts for the construction of public works. At that time, IND.CODE § 5-16-7-1 *et seq.* and the federal Davis Bacon Act [3] mandated payment of prevailing wages for workers employed on public works projects. Keith worked on the Muncie Sanitary District and Community Development projects and was compensated $13.00 per hour. He also worked on the Blair's Green Acres project ("Blair's project") for $350 per week from June—October 1985. Wendell was employed on the Blair's project and

---

**2.** Other issues mentioned in the appellant's brief were not accompanied by cogent argument or citation to authority. Review of such issues is waived. *Captain & Co. v. Stenberg* (1987), Ind.

App., 505 N.E.2d 88, 95, *trans. denied;* Ind. Appellate Rule 8.3(A)(7).

**3.** 40 U.S.C. § 276a.

received $8.00 per hour for regular hours and $12.00 per hour for overtime.

Keith signed an affidavit of release on October 30, 1985, in exchange for $500 cash and a $1,500 I.O.U. The affidavit released Stampco from payment of minimum wages and prevailing wages for work performed on public works projects.

After Keith and Wendell were terminated from employment, both filed suit seeking compensation for the difference between the wages paid and those to which they were entitled under the prevailing scale of wages. The trial court awarded Keith $8,146.74 unpaid wages differential and Wendell, $2,502.11. The awards were trebled in accordance with I.C. §§ 22–2–5–1 and 2.

## DISCUSSION AND DECISION

### Issue One

■ Stampco does not argue on appeal that the wages paid to Keith and Wendell complied with the prevailing wage statute. I.C. § 5–16–7–1 *et seq.* Stampco argues that Keith's claim regarding unpaid wages on the Muncie Community Development project is not governed by the Indiana statute, but by the Federal Davis Bacon Act, which Stampco alleges does not provide a private right of action. We agree the federal statute supplants the Indiana prevailing wage statute in regard to the Muncie Community Development project. The federal statute regulates the method of and time for payment of wages. The federal statute requires a provision for payment of prevailing wages in all contracts for federal public works in excess of $2,000. Keith's claim for damages on the Muncie

Community Development project, which received federal financial assistance, must be viewed in consideration of the federal statute.

■ Stampco argues no private action is authorized by the federal statute. *McDaniel v. University of Chicago* (7th Cir.1977), 548 F.2d 689, 695, holds otherwise. Although other federal courts have not found an implied private cause of action, *see Weber v. Heat Control Co.* (3d Cir.1984), 728 F.2d 599, 600 and *U.S. v. Capeletti Brothers, Inc.,* (5th Cir.1980), 621 F.2d 1309, 1317, we elect to follow the Seventh Circuit's decision in *McDaniel.*[4] In *McDaniel,* the court utilized the analysis in *Cort v. Ash,* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, to determine whether an employee has an implied private right of action. *McDaniel,* 548 F.2d at 692. The first step of the four step analysis of *Cort* is to determine if the plaintiff is the special beneficiary of the act. *Id.* The court stated, "On its face, the [Davis–Bacon] Act is a minimum wage law designed for the benefit of construction workers." *McDaniel,* 548 F.2d at 693 (quoting *U.S. v. Binghampton Constr. Co.* (1954), 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594). The court then determined that employees are the special beneficiaries of the Davis–Bacon Act. After the *McDaniel* court considered the remaining steps of the *Cort* analysis, the court found an implied private right of action for the employee. *McDaniel,* 548 F.2d at 695. Therefore, we find Keith does have a valid cause of action under the federal statute for unpaid wages on the Muncie Community Development project.

**4.** We acknowledge the Seventh Circuit's statement in *Simpson v. Reynolds Metals Co.* (7th Cir.1980), 629 F.2d 1226, 1240, fn. 27, that *McDaniel* was decided without the guidance of *Cannon v. University of Chicago,* (1979), 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560. However, we note *Simpson* did not involve the Davis Bacon Act and that the *Simpson* court did not overrule *McDaniel;* therefore, we infer the *McDaniel* decision is still valid precedent. Although the United States Supreme Court dealt with a related issue regarding the Davis Bacon Act in *Universities Research Ass'n v. Coutu* (1981), 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d

662, the Supreme Court clearly stated that the issue presented in *McDaniel* differed from the issue in *Coutu. Id.* at 768–69, n. 17, 101 S.Ct. at 1460, n. 17. The Supreme Court concluded in *Coutu* that Congress did not create a private right of action for an employee under a contract that did not contain prevailing wage stipulations. *Id.* at 770, 101 S.Ct. at 1461. The Supreme Court expressly refused to decide whether the act created an implied private right of action to enforce a contract that contained specific Davis Bacon stipulations. *Id.* at 769, 101 S.Ct. at 1460.

■ In regard to the other public works project, Stampco contends that the Indiana statute is a criminal statute and does not provide a private cause of action for Keith or Wendell. Although no provision explicitly authorizes a civil suit for violation of the Indiana statute, we adopt the Seventh Circuit's analysis of the federal statute and find an implied right of action in the Indiana statute. *See McDaniel*, 548 F.2d at 695. Our ruling is consistent with the Indiana cases recognizing the right of employees of public contractors to sue as third party beneficiaries for wages on a contract between the contractor and the public. *Indiana State Building and Constr. Trades Council v. Warsaw Community School Corp.* (1986), Ind.App., 493 N.E.2d 800, 805.

We find Keith and Wendell have valid causes of action against Stampco under the prevailing wage statutes.

*Issue Two*

■ Next, Stampco argues that Keith and Wendell waived any benefits under the statutes by agreeing to lower wages. *See Bell v. Town of Sullivan* (1902), 158 Ind. 199, 63 N.E. 209 (employee may waive benefit of minimum wage statute where no rule of public policy is being violated). We find the decision in *Bell* to be inapposite, because we find Stampco's employment agreements with Keith and Wendell violate public policy.

■ "Whether or not a contract is against public policy is a question of law for the court to determine from all of the circumstances in a particular case." *Ross Clinic, Inc. v. Tabion* (1981), Ind.App., 419 N.E.2d 219, 223, *trans. denied.* We keep in mind that it is in the public's best interest that the freedom of contract should not be restricted unnecessarily and that agreements are not to be held void as against public policy unless they are clearly contrary to what the legislature has declared to be public policy, or unless they clearly tend to injure the public in some way. *Id.*

■ Indiana's prevailing wage statute has been held constitutional. *Board of Commissioners of the County of Allen v. Jones* (1983), Ind.App., 457 N.E.2d 580, 585–87. In *Jones*, the court held the prevailing wage statute does not infringe upon the liberty to contract. *Id.* Prevailing wage statutes are enacted to protect public works employees from substandard wages. *See McDaniel*, 548 F.2d at 693; *see also Ames Constr. Co. v. Dole* (D.Minn.1989), 727 F.Supp. 502, 508. Stampco's employment agreements with Keith and Wendell violated the Davis Bacon Act and I.C. § 5–16–7–1 *et seq.* which require payment of wages at the prevailing rate. As a general rule, a contract made in violation of a statute is presumed void. *Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 974, *trans. denied.* Public policy would be violated if we were to condone Stampco's failure to follow the law. Allowing settlement or release of a claim would permit unscrupulous contractors to force employees to submit to economic pressures and accept lower wages. We find the employment agreements are void as against public policy and refuse to enforce the agreements which would subvert the federal and state legislatures' intentions.

■ Stampco further contends Keith's release waives any claim for unpaid wages against Stampco. Because we have found an employee cannot waive the benefits of the prevailing wage statutes by an employment agreement to lower compensation, we also find an employee cannot release his right to receive prevailing wages. For the reasons articulated in regard to the employment agreement, we find the release to be void as against public policy.

*Issue Three*

■ Stampco next contends the court erroneously awarded damages and attorneys' fees. Stampco initially argues IND.CODE § 22–2–5–2 is not applicable because the salary was paid, Keith and Wendell failed to request the unpaid wages while they were employed, and the Blair's project was a Barrett Law[5] project. The argument

---

5. A Barrett Law project is one which is a city or county improvement authorized pursuant to

IND.CODE § 36–9–18–1 *et seq.*

that the salary was paid so I.C. § 22–2–5–2 does not apply is without merit. Stampco does not contend that the prevailing wage was paid. Stampco only presents arguments that no penalty should be levied for underpayment in this case. Consequently, his arguments concede that the wages were not paid in accordance with I.C. § 5–16–7–1. The trial court did not err in invoking I.C. § 22–2–5–2.

■ Next, Stampco argues liquidated damages may not be sought because no demand was made "prior to or concurrent with the employment" as required by I.C. § 22–2–5–2. *See City of Hammond v. Conley* (1986), Ind.App., 498 N.E.2d 48, 52. However, our supreme court has decided recently that no demand is required where the employee was terminated from employment. *Osler Institute, Inc. v. Inglert* (1991), Ind., 569 N.E.2d 636, *aff'ing*, 558 N.E.2d 901, 905. "To hold otherwise would allow employers owing wages to their employees to terminate the employees, avoid the payment of wages, and then be shielded from the application of the penalty statute." *Osler Institute*, 558 N.E.2d at 905.

■ Stampco alleges the Blair's project, which was a Barrett Law project, was not publicly funded. Therefore, Stampco concludes liquidated damages cannot be awarded because I.C. § 22–2–5–2 applies only to publicly funded projects. We disagree with Stampco's allegation that the Blair's project was not a publicly funded public works project. The contract for the Blair's project was made by the city of Anderson, and the contractors were paid by the city from a public fund created by assessments levied against property owners. *See* I.C. §§ 36–9–18–1 *et seq.* and 36–9–19–1 *et seq.* We conclude the court did not err in relying on I.C. § 22–2–5–2 when it determined the damage awards.

■ The remainder of Stampco's arguments is that the damage awards were excessive. The court determined Keith

was paid $8,146.74 below the prevailing wage rate. The court awarded liquidated damages and increased the award to $25,426.62 [6]. Wendell was underpaid $2,502.11, which amount was tripled to $7,506.22 [7] as liquidated damages. Stampco contends the court erred and gave Keith and Wendell triple the amount of unpaid wages, instead of double as prescribed by I.C. § 22–2–5–2. We have interpreted I.C. § 22–2–5–2 to provide a penalty equal to double the unpaid wages in addition to the unpaid wages. *Fardy v. Physicians Health Rehab. Serv.* (1988), Ind.App., 529 N.E.2d 879, 882. The total maximum award may amount to three times the wages due. *Id.* Therefore, we find no error in the court's treble awards pursuant to I.C. § 22–2–5–2.

Affirmed.

ROBERTSON, J., concurs.

BUCHANAN, J., dissents with separate opinion.

BUCHANAN, Judge, dissenting.

### ISSUE ONE

I cannot agree with the majority's conclusion that the federal Davis–Bacon Act, 40 U.S.C. § 276a, provides a private right of action for wage earners. The majority relies upon *McDaniel v. University of Chicago* (7th Cir.1977), 548 F.2d 689. *cert. denied* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780, to support its conclusion. Decisions since *McDaniel*, however, demonstrate that there is no private right of action granted by the Davis–Bacon Act.

The court in *United States v. Capeletti Bros., Inc.* (5th Cir.1980), 621 F.2d 1309, considered the same question as *McDaniel*, and reached an opposite conclusion. Applying the United States Supreme Court's analysis for determining whether a statute implies a private right of action found in *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 and *Cannon v. Univer-*

---

6. This amount was the result of a modification by the court when it granted a portion of Stampco's motion to correct errors.

7. We note that the trial court erred when figuring the triple of $2,502.11 as $7,506.22, instead of $7,506.33. However, the judgment need not be corrected because the discrepancy is *de minimis*.

*sity of Chicago* (1979), 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560, the Fifth Circuit concluded that the Davis–Bacon Act did *not* contain an implied private right of action.

The district court in *Weber v. Heat Control Co.* (D.C.N.J.1982), 579 F.Supp. 346, *aff'd* (3rd Cir.1984), 728 F.2d 599, in deciding whether to follow *McDaniel* or *Capeletti,* concluded that the analysis in *Capeletti, supra,* was superior and observed that recent United States Supreme Court and Seventh Circuit decisions cast serious doubt as to the continuing validity of *McDaniel.*

In *Universities Research Ass'n v. Coutu* (1981), 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662, the Supreme Court considered whether the Davis–Bacon Act intended to confer to employees a private right of action when there had been an administrative determination that Davis–Bacon work had not been called-for. The Supreme Court concluded that there was no such implied right of action in the Davis–Bacon Act. Although the Supreme Court did not reach the question of whether *McDaniel* was correct, the Court opined: "While we recognize that some of our reasoning arguably applies to the question whether the Act creates *any* implied right of action, we have no reason to reach that broader issue here." *Coutu, supra* 450 U.S. at 769 n. 19, 101 S.Ct. at 1460 n. 19 (emphasis in original).

The Seventh Circuit, after the Supreme Court rendered its decision in *Cannon, supra,* determined that §§ 504 and 503(a) of Title V of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 and 793(a), did not authorize a private right of action. *Simpson v. Reynolds Metals Co., Inc.* (7th Cir.1980), 629 F.2d 1226. The Seventh Circuit, observing that its analysis in *Simpson* was different than that used in *McDaniel,* reflected that the *McDaniel* decision was made "without the guidance of the Supreme Court's pronouncements in *Cannon v. University of Chicago....*" *Simpson, supra* at 1240 n. 27.

In *Cannon,* the Supreme Court had clarified the threshold inquiry of *Cort, supra,* as to whether the plaintiff was a member of the class for whose especial benefit the statute was enacted. The *Cannon* decision made clear that the question was answerable "by looking to the language of the statute itself...." *Cannon, supra* 441 U.S. at 689, 99 S.Ct. at 1953.

Thus, the flaw in *McDaniel's* analysis is apparent after a close examination of the Court's decision in *Coutu.* The initial question to be decided in determining whether a statute implies a right of action is whether the plaintiff is one of the class for whose especial benefit the statute was enacted. In *McDaniel,* the court determined that the Davis–Bacon Act was passed for the special benefit of wage earning construction workers because they were the primary beneficiaries of the act.

In *Coutu, supra,* the Supreme Court made the same inquiry, but reached a different conclusion. After recognizing that the Davis–Bacon Act was designed for the benefit of construction workers, the Court continued: *"But the fact that an enactment is designed to benefit a particular class does not end the inquiry;* instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation." *Id.* 450 U.S. at 771, 101 S.Ct. at 1461 (emphasis supplied). The Court concluded:

> "that there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency. [*Cannon* ], [441 U.S.] at 690–692, 99 S.Ct., at 1954–55. Section 1 of the Davis–Bacon Act requires that certain stipulations be placed in federal construction contracts for the benefit of mechanics and laborers, but it does not confer rights directly on those individuals. *Since § 1 is simply 'phrased as a directive to federal agencies engaged in the disbursement of public funds,'* 441 U.S., at 693, n. 14, 99 S.Ct., at 1955, n. 14,

*its language provides no support for the implication of a private remedy."* *Coutu, supra* 450 U.S. at 772–73, 101 S.Ct. at 1462–63 *quoting Cannon, supra* 441 U.S. at 690–693, 99 S.Ct. at 1954–1956 (footnote omitted) (emphasis supplied). The analysis of *McDaniel* was incomplete because the court failed to consider the language of the statute. When the Supreme Court considered the language of the Davis–Bacon Act, it determined there was no implied right of action.

The Supreme Court unquestionably overruled the *analysis* of *McDaniel* in *Cannon,* and the Seventh Circuit recognized this in *Simpson.* The Supreme Court impliedly overruled *McDaniel*'s holding in *Coutu* when it observed the *analysis* used in *Coutu* was applicable to the question considered in *McDaniel.* We should conclude that the Davis–Bacon Act does not imply that a private right of action is available to Keith and Wendell. Similarly, we should not use the flawed and obsolete analysis of *McDaniel* to conclude that the Indiana prevailing wage statutes, Ind.Code 5–16–7–1 to –5 (1990), also confer private causes of action to Keith and Wendell.

IC 5–16–7–3 provides that contractors who violate the act commit class B misdemeanors. IC 5–16–7–1 merely directs the government agencies employing the contractors to require the contractor to pay the statute's prevailing wage, just as the Davis–Bacon Act directs federal agencies to require contractors to pay the prevailing wage. Using the United States Supreme Court's analysis in *Coutu, Cannon,* and *Cort,* it is clear that our legislature did *not* intend to confer a private right of action to wage earners. This conclusion is supported by the existence of a criminal penalty for a violation of the act. *See Cort, supra.*

In light of *Cannon* and *Coutu,* the majority's reliance on *McDaniel* is a slender reed which collapses under the weight of all the federal cases on this subject. There are no Indiana cases.

### ISSUE TWO

My disagreement with the majority's holding extends to issue two. The evidence demonstrates that Keith settled his claim against Stampco, and he should be held to his bargain.

While I would agree that an employee's right to receive prevailing wages cannot be waived by an employment contract, I do not agree with the majority's conclusion: "Because we have found an employee cannot waive the benefits of the prevailing wage statutes by an employment agreement to lower compensation, we also find an employee cannot *release his right to receive* prevailing wages." At 513 (emphasis supplied).

The record demonstrates that Keith did *not* release his "right to receive" prevailing wages, but rather, he released his *claim* for not having *received* prevailing wages. Keith executed his released on October 30, 1985, *after* his employment with Stampco had been terminated. The release provided:

"OCTOBER 30
1985

WAGE SCALE AFFIDAVIT:

I WENDLE [sic] KEITH GUFFY [sic] release STAMPCO CONSTRUCTION INC. from the scale of minimum wages established on all projects pursuant to minimum wages established by Chapter 319, Acts of the General Assembly, 1935. All said scale of prevailing wages *have been paid* including any and all overtime on all projects that I have worked on and was employed by STAMPCO CONSTRUCTION INC.

This wage scale affidavit also releases Everett Stamper from any and all *claims for prevailing wages* and any overtime as stated above and I have been paid in full.

/s/ W. Keith Guffey
Wendle [sic] Keith Guffy [sic]"

*Record* at 253 (emphasis supplied).

So the majority's characterization of the release as a release of Keith's *right* to receive prevailing wages is inaccurate. Keith executed the release in exchange for $2000, including a $500 cash payment and a promise to pay $1500. *Record* at 251. The

release was executed *after* Keith's employment had been terminated and *after* any right of action would have accrued. Keith did not have a "right to receive" prevailing wages because he was no longer employed. There is no known public policy precluding litigants from settling their claims. Keith entered into a negotiated settlement.

A release is a surrender of a claimant's right to prosecute a cause of action. *Lechner v. Reutepohler* (1989), Ind.App., 545 N.E.2d 1144. As our supreme court recognized in *Indiana Bell Tel. Co. v. Mygrant* (1984), Ind., 471 N.E.2d 660:

> "[Releasees] do not make settlement and take general releases merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more if his injuries prove serious. On the contrary, a settlement is made and a general release taken for the purpose of foreclosing further claims. The releasee does not stand in a fiduciary relationship to the releasor. The injured party is not required to make a settlement, and the general rule of freedom of contract includes the freedom to make a bad bargain."

*Id.* at 664, *quoting Sanger v. Yellow Cab Co., Inc.* (1972), Mo., 486 S.W.2d 477, 481–82.

Thus, there is no legal basis for denying Keith the right to settle any prevailing wage claims he might have had. The wisdom of Keith's decision to release any prevailing wage claim he might have had in exchange for the consideration he received is irrelevant to our determination. The majority's wholesale, conclusory determination that claims for prevailing wages cannot be settled is unsupportable in my opinion.

The trial court's judgment should be reversed.